JOHN PALMER AND WIFE v. THE VILLAGE OF
ST. ALBANS.

*Municipal Corporation. Village. Master and Servant. Negligence. Evidence. New Trial. Referee.*

1. To charge one man with the negligence of another, it is not enough to show that the latter was in the employment of the former; but it must be shown that, in doing the act complained of, he was engaged in his master's business, acting within the scope of his employment, and that there existed between them the relation of master and servant, which is the foundation of the rule *respondeat superior.*

2. Thus, an incorporated village is not liable for injuries resulting from the negligence of one of its employees in piling tiles at the direction of the defendant's street commissioner in a yard occupied by it in storing its property, when the defendant village was not the owner of the tiles, and they were not in its custody or control, and the commissioner, taking advantage of his official position, was acting, as to the tiles, not as its servant, but as an individual for his private gain; and when the act did not amount to a nuisance, and a public trust was not involved.

3. The owner or occupant of real estate is not liable for injuries resulting from the negligent use of personal property on it, when he neither owns nor controls the personal property, unless the use amounts to a nuisance.

4. In an action against a village for injuries resulting from the negligence of its employee in piling tiles, parol evidence was admissible to prove that the defendant neither owned nor controlled them, although they had been shipped to the defendant, and a bill of them had been rendered to it, and allowed by the president of its board of trustees.

5. A cause will not be remanded for the referee to revise his findings as to a certain point, on the ground that it was not regarded as very important by counsel, nor given much prominence on trial, when it appears from the papers and briefs that the point was brought to the attention of the referee by both sides, and discussed in the court below, as it would amount to granting a new trial.

CASE for negligence. Heard on a referee's report, exceptions, and motion to recommit, September Term, 1887, POWERS, J., presiding. Judgment on the report for the damages found. Reversed.

The referee found, in substance :

That the defendant was a municipal corporation, duly organized under the laws of Vermont, and that its fiscal year began the first Wednesday in April in each year ; that in 1879, at a meeting of the trustees of the village, Marshall Mason was by them appointed water superintendent and street commissioner, and again appointed April 10, 1880, and that he acted in that capacity during those years, and was paid for his services by the village ; that at the time of the injury complained of the village was in the occupancy of certain land called a corporation yard, paying rent therefor at the rate of $38 per year ; that the front or main part of plaintiffs' house came to, and stood along the south side of, the corporation yard ; that a close-boarded fence ran from the north-east corner of the main part of plaintiffs' house, along the south line of the corporation yard, to the east line of the plaintiffs' premises ; that between said fence and a part of plaintiffs' house there was a space 31 feet and 6 inches long (east and west) by nine feet wide (north and south) ; that part of this space was used as a clothes-yard for hanging out clothes to dry ; that the plaintiffs were man and wife, and the wife took in washing, and the clothes-yard was in constant or daily use by her ; that the plaintiffs claimed that on April 14, 1880, the fence, by reason of pressure from tiles or drain-pipe negligently piled or allowed to be or fall against it in the corporation yard, fell into the clothes-yard, and inflicted severe bodily injury upon the plaintiff wife ; and their evidence tended to show, and the referee found that said tiles were then in the apparent custody of the village by its servants and employees ; that a prudent man, knowing the apparent condition of the fence, and the use made of the clothes-yard, and considering the condition in which the ground would naturally be in the spring of the year, would

not, in the exercise of prudence, have so piled the tiles, and left them so piled, until the 14th of the next April; and so finds that the tiles were negligently piled and left; that the plaintiff wife went into the clothes-yard to get some clothes hanging there, when part of the fence gave way and fell against and upon her, and that two pieces of six-inch tile, weighing from 50 to 55 pounds each, followed the fence and rested upon it as it lay upon the ground, and one bend of smaller tile, weighing about 10 pounds went over the fallen fence to the south side of it; that the fence fell by reason of pressure or force received from the tiles, and caused by the negligent manner in which the tiles had been piled and left as above stated.

The defendant offered evidence tending to show that the tiles were the property of Ripley Sons, and were in the custody and control of said Mason as an individual, and not in his official capacity. The plaintiffs objected to the evidence so offered, claiming that it was not competent to show such facts. The referee admitted the evidence subject to the objection and exception of the plaintiff, and from it finds, in regard to the ownership and custody of the tiles, that Mason had been water superintendent and street commissioner of said village for some time prior to 1876; that in the year 1876 he had made an arrangement, orally with Ripley Sons, manufacturers of cement tile or drain pipe, which was thereafter acted upon until after said April 14, 1880, by which he was to order from them from time to time tiles to be kept in stock at St. Albans; they were to send him memoranda of shipments made on such orders, and he was to take charge and care of the tile; from the tiles shipped and received the village was to have, and he was to sell to other parties, tiles as they were wanted. At the end of the season, when the ground got to be in such condition that tiles could not be laid, he was to take and send them an inventry of tiles remaining unused and unsold; the quantity so inventoried was to be deducted from the quantity shipped, and the balance paid for; and he was to receive from them a percentage of the amount received by them for tiles so disposed and paid for.

Under that arrangement tiles were ordered, shipped, and received from time to time, and were generally taken to and stored in the corporation yard, though they were sometimes stored in other places where village property was stored; were sometimes stored in places not occupied by the village, and were sometimes delivered and taken directly from the cars for immediate use. A great deal of the tile was used in making sewers in the village of St. Albans, the sewers being ordered and located by the trustees and then constructed under the direction of Mason, in his official capacity, by employees of the village, and the expense being apportioned and assessed to the abutters, and collected of them into the village treasury.

Mason also sold tile from the same storage to other parties in the vicinity. The bills of assessments to abutters, and for tiles sold others, were made out by Mason and delivered to the treasurer of the village for collection, and were collected and paid into the village treasury. The freight on the tiles shipped to St. Albans was paid by the village, and the tiles were handled by men employed and paid by the village, and at the end of the season a bill or statement was rendered to the village, and the village paid for the tile which had been used by the village, and in making sewers, and that which had been sold and paid for into the village treasury. In such bills or statements to the village, the tile remaining unsold and unused at the end of the season were credited to the village, and the tile so credited were carried into the stock of the next year, and treated in the same manner as tiles received upon further orders and shipments.

At the end of each village year, Mason, as water superintendent, made a report, and also as street commissioner made another report, to the trustees, which reports purported to show what property of the village he, in those capacities, had in his charge. And the tiles which had been inventoried and credited to the village that year at the end of the season for laying tiles, were not included in either report.

The trustees knew that the tiles used by the village were

from Ripley Sons, and at what price they were being had. The trustees coming into office in the spring of 1880 did not know until late in that year that tiles were sold to individuals and the pay collected into the village treasury, or that tiles were being kept in stock as above stated, or what the terms of arrangement with Ripley Sons were, or that Mason acted in any way for or received a compensation from Ripley Sons.

The tiles in said corporation yard on April 14, 1880, had been sorted and piled there the autumn before by employees of the village, at Mason's direction; he had made and sent to Ripley Sons an inventory of them; a statement or bill had been rendered by Ripley Sons to the village, in which those tiles had been credited to the village, and none of those had been used by the village.

The referee found that, if evidence tending to show the above-stated facts relating to the tiles and custody of the tiles was properly admitted against the plaintiffs' objection and exception, the tiles in the corporation yard on said April 14, 1880, were not, when piled, and thence until after April 14, 1880, the property of the village, and were not in the custody and control of the village or its servants or employees, as such, during that time.

The referee found that the plaintiff's wife, when she received the injury, was acting as a prudent person who did not know the condition of the tiles, and did not have any reason to apprehend any danger on account of them, might, in the exercise of prudence, have acted at that time and place; that if on this report the plaintiffs are entitled to recover, they are entitled as damages for the bodily injury to the plaintiff's wife the sum of $1,500, and the costs of the suit.

Exhibits V, W, X and Y were simply bills of drain pipe, which purported to have been presented by Ripley Sons to the village of St. Albans at the end of each of the years 1877, 1878, 1879 and 1880, and were marked "allowed" by the president of the village.

*Wilson & Hall* and *Cross & Start*, for the defendant.

The evidence of Mason tended, at least, to support the facts found by the referee; and hence the referee's findings are conclusive. *Stevens* v. *Pearson*, 5 Vt. 503.

. A referee's report must be accepted or rejected upon the same grounds that govern the validity of awards. *Kimball* v. *Baxter*, 27 Vt. 628. It must appear that the referee has violated known and acknowledged principles of justice, or his report must stand. *Martin* v. *Wells*, 43 Vt. 428; *Fuller* v. *Adams*, 44 Vt. 543; *Darby* v. *St. Albans Nat. Bank*, 57 Vt. 370.

The question of the custody of tiles was a material one to be found by the referee. *Vilas Nat. Bank* v. *Strait*, 2 New Eng. Rep. 112, 58 Vt. 448.

Mason was not authorized to act for the defendant as to the tiles; and it never ratified his acts. *Boom* v. *Utica*, 2 Barb. 111; *Hodges* v. *Buffalo*, 2 Denio, 113.

The doctrine of *respondeat superior* cannot be invoked against defendant. Dill. Mun. Corp. s. 772; *Walcott* v. *Swampscott*, 1 Allen, 101; *Morrison* v. *Lawrence*, 98 Mass. 221; *Sayer* v. *Boston*, 19 Pick. 511.

It must at least appear that the act complained of constituted a nuisance, or there could be no liability. *Bailey* v. *Troy & B. R. Co.* 57 Vt. 253.

The owner or possessor of real estate is not answerable for acts of negligence committed upon it, if the conduct of the business which causes the injury is not on his account, or under his control. *Earle* v. *Hall*, 2 Met. 353; *White* v. *Montgomery*, 58 Ga. 204; Shearm. & Redf. Neg. s. 495; *Way* v. *Powers*, 57 Vt. 135; *Bailey* v. *Troy & B. R. Co. supra.*

But if Mason, in his official capacity, or the trustees even, had made first such an arrangement with Ripley Sons as the referee finds was made, then it is submitted that the village was not liable; for such an arrangement was not within the scope of their authority, expressed in the charter. Dill. Mun. Corp. s. 381; 4 Wait Act. & Def. 644. A corporation is

bound only when its officers act within the charter or scope of their powers. Dill. Mun. Corp. s. 766; *Smith* v. *Rathbun*, 57 N. Y. 122; *Anthony* v. *Adams*, 1 Met. 284; *Perley* v. *Georgetown*, 7 Gray, 464; *Harvey* v. *Rochester*, 35 Barb. 177.

Acts *ultra vires*, though done *colore officii*, impose no corporate liability. Aug. & A. Corp. s. 311; Dill. Mun. Corp. s. 770, note.

Under the charter, the trustees are a board of public officers to build sewers—when the public health shall require it. In the exercise of this power they are the agents of defendant, but they represent the general public; and the defendant cannot be made liable for any neglect of the trustees while exercising their powers. *Welsh* v. *Rutland*, 56 Vt. 228; *Cushing* v. *Bedford*, 125 Mass. 526; *Young* v. *Yarmouth*, 9 Gray, 386; *Seele* v. *Deering*, 4 New Eng. Rep. 550; *Lemon* v. *Newton*, 134 Mass. 476; *Burrill* v. *Augusta*, 1 New Eng. Rep. 697; *Boyd Insurance Patrol*, 5 Cent. Rep. 233; *Hafford* v. *New Bedford*, 16 Gray, 297; *Fisher* v. *Boston*, 104 Mass. 87; *Jewett* v. *New Haven*, 38 Conn. 268; *White* v. *Marshfield*, 48 Vt. 20; *Eastman* v. *Meredith*, 36 N. H. 284.

*M. Buck & Son*, for the plaintiffs.

The referee found that the tiles, at the time of the injury, were in the apparent custody of the village by its servants and employees.

The question of title is immaterial; it was so held in this case. 56 Vt. 519.

The evidence to prove that Ripley Sons were the owners of the tiles was not admissible; but if evidence of ownership was admissible then exhibits V, W, X, and Y are the best evidence, and the plaintiffs' objection to Mason's testimony as to the tiles were well taken.

These bills show that the transactions as to the tiles were between the Ripleys and defendant; that both parties treated them as sales; that the tiles were shipped and charged to de-

fendant; and that the bills were received and approved by defendant. *Davis* v. *Bradley*, 24 Vt. 55.

On all the facts found by the referee, the defendant is estopped to deny its custody of the tiles. The defendant's conduct indicated it to be the actual, and therefore the responsible custodian of the tiles; and relying upon this, the plaintiffs brought their suit; and it would operate a fraud upon them, to allow the defendant to deny that it acted in the capacity in which it appeared to act.

*H. C. Adams*, also for the plaintiffs.

The rule laid down in *Joel* v. *Morrison*, 6 C. & P. 501, and in *Croft* v. *Alison*, 4 Barn. & Ald. 590, governs this case. The injuries received were caused by the negligent acts of the defendant's servants, acting in the course of their employment. No question can be made about the corporate powers of the village, or the authority of the trustees to construct sewers. Tiles were necessary. Power to do a particular thing implies the power to employ the necessary means to that end. The sewers were ordered and located by the trustees, and then constructed under the direction of Mason, in his official capacity, by the employees of the village. Express authority in Mason to procure tiles was not necessary. 2 Dill. Mun. Corp. s. 766.

The freight on the tiles was paid by defendant, and from the time the tiles arrived in St. Albans, they were handled by employees of the village and paid for by it. There was nothing in the nature of the acts of custody that can be imputed to Mason's agency for Ripley Sons. There was a ratification by the trustees.

The opinion of the court was delivered by

ROWELL, J. The defendant offered evidence tending to show that before and at the time in question the tiles were the property of Ripley Sons, and in the custody and control of Mason as an individual, and not as water superintendent nor street commissioner, both of which offices he had for a long

time and then held. The plaintiffs objected to the admission of this evidence, for that it was not competent to show such facts. But the referee admitted it, and found therefrom certain facts, which he details, and from those facts alone he finds that the tiles in the corporation yard on the day of the accident were not when piled there the fall before, nor thence until after the accident, the property of the village, nor in its custody or control, nor in the custody or control of its servants or employees as such.

It was competent to show what it is said the evidence tended to prove, unless it is to be said that the village is liable any way, because the tiles were on its land and in its apparent custody and control. But such is not the rule in respect of real estate, as we shall see, unless the act complained of is a nuisance in itself, or, perhaps, a public trust is involved, neither of which elements is present here.

It is not claimed that the evidence did not tend to show the facts found from it, but that the finding *from* those facts is unwarranted. And here the question is, Do those facts tend to support the finding? If they do, the finding must stand. It is true, as argued, that many of them tend strongly against the finding, and to show that the custody and responsible control of the tiles were in the village in fact as well as in appearance, and for its own purposes and business; but it is also true that some of them tend to show the contrary, and to support the finding, and so it must stand, and the case be decided from that standpoint; for we do not think, as argued by Mr. Buck, that the exhibits referred to preclude parol evidence of ownership, nor that the defendant is estopped to deny its custody of the tiles.

It is contended that the rule laid down in *Joel* v. *Morrison*, 6 C. & P. 501, governs this case. There the defendant's servant, in going from one place to another with his master's team on his master's business, drove *extra viam* for some purpose of his own, and while thus driving negligently ran against and injured the plaintiff; and it was held that if the

servant was going out of his way against his master's implied command when driving on his master's business, he made his master liable; but if he was going on a frolic of his own, without being at all on his master's business, that the master was not liable. The law is here most properly laid down, as said in *Sleath* v. *Wilson*, 9 C. & P. 607, where it is said to be quite clear, that if a servant, without his master's knowledge, takes his carriage out of the coach house, and with it commits an injury, the master is not liable, and on the ground that he has not intrusted the servant with the carriage; but that, when the master has intrusted the servant with the carriage, it is no answer to say that the servant acted improperly in its management, for if so, it might be claimed that if the master directs his servant to drive slowly but he disobeys and drives fast and thereby negligently causes an injury, the master is not liable, which is not the law, for in such case the master is liable, because, by entrusting the servant with the carriage he has put it in his power to mismanage it.

*Quinn* v. *Power*, 87 N. Y. 535, is much to the same point. There the defendant owned a ferry boat running across the Hudson between two points. One day when the boat was making a regular trip, the pilot in charge took on a boatman as matter of favor, and agreed to put him on board his boat, which was part of a tow passing up the river. The ferry boat diverged from its course to reach the tow, and through the negligence of those in charge collided with a canal boat attached to the tow, whereby the plaintiff's intestate was thrown into the river and drowned; and the defendant was held liable. In discussing the case the court says : " When this ferry boat left the dock at Athens it started for its terminus at Hudson. It took freight and passengers to transfer across the river. Servants and boat, as the latter moved out into the river, were doing the master's business and acting both in the line of duty and employment. There was a usual track or route by which the boat crossed. It may even have been selected and directed by the owner. In deviating from it the

servants might disregard the instructions of the master, but they were none the less engaged in the master's business of transporting freight and passengers from one point to the other because they did not follow the usual route or pursued another or even a forbidden track. They were still doing their master's business, though in a manner contrary to his instructions. If they stopped the boat in the middle of the river, they did not cease to be engaged in the master's business. Even if the motive was some purpose of their own, they were still about their usual employment, although pursuing it in a way to subserve their own purpose also. When they took this passenger to the tow, and in so doing deviated from the usual course, and stopped the boat midriver for that reason, they were still engaged in the master's business of transporting freight and passengers across the river. They were doing it in a way not authorized, perhaps, and possibly in some sense to effect a purpose of their own; but they were none the less acting within the scope of their employment and engaged in their master's business." This reasoning brings out clearly both the rule and its application.

The rule of *respondeat superior* is of universal application, whether the act be one of omission or of commission, whether negligent or fraudulent. And it makes no difference that the master did not know of the act, or disapproved it, or even forbade it, provided the servant was acting at the time for the master and within the scope of the business entrusted to him. *Philadelphia & Reading R. R. Co.* v. *Derby*, 14 How. 468; *Rounds* v. *The Delaware, Lackawanna & Western R. R. Co.* 64 N. Y. 129; *Quinn* v. *Power*, 87 N. Y. 535.

But the foundation of the rule is, the relation of master and servant. When that does not exist, the law does not impute to one man the negligence of another. *Hexamer* v. *Webb*, 101 N. Y. 377; *Quarman* v. *Burnett*, 6 M. & W. 499. Hence, the modern cases all show that it is not enough in order to charge one man with the negligence of another, to show that the latter was acting at the time under the employment of the

former; but you. must go further and show that the employ-ment created the relation of master and servant between them. *Hilliard* v. *Richardson*, 3 Gray, 340, where the cases are collated and commented upon.

Now, testing this case by the rule invoked for its govern-ment, we regard the finding that the tiles were not the property of the village, nor in its custody or control, as perfectly fatal to the plaintiffs' right of recovery, as it absolutely negatives the existence of the relation of master and servant between the village and Mason or any other of its employees in respect of the tiles, and precludes the considerations urged upon us to show the contrary. Although Mason and the others who handled and piled the tiles were at the time the employees of the village, yet they were not its servants as to them, for it was not the business of the village, nor a matter in which it had any property nor over which he had any control; but it was a frolic of Mason's own, in which he seems to have taken advantage of his official position for the purpose of private gain.

Nor do we see any other ground on which the plaintiffs can stand.

It has sometimes been said that there is a distinction in this respect between fixed and movable property, and that one in the possession of the former must take care that it is not so used as to injure others, and this, whether it be used by his own immediate servants or by contractors or their servants; that injuries done upon such property are in the nature of nuisances, for which the occupant ought to be held chargeable when occasioned by those whom he brings upon it; that the law confines its use to him, and he should take care not to bring persons upon it who do mischief to others. This dis-tinction is adverted to in *Laugher* v. *Painter*, 5 B. & C. 547; *The Mayor etc. of New York* v. *Bailey*, 2 Denio, 433; and noticed in *Quarman* v. *Burnett*, 6 M. & W. 499. But on full consideration in *Hobbit* v. *The London & Northwestern R. R. Co.* 4 Exch. 254, it was held that there is no such distinction

except when the act complained of is such as to amount to a nuisance. And this is undoubtedly the present view. But possibly we should add to the exception, cases involving a public trust, as intimated in *Hilliard* v. *Richardson*, 3 Gray, 349, 364.

The result is that the judgment below is reversed, and judgment on the report for the defendant.

The petition for a new trial, preferred by the defendant, has no foundation, and is dismissed with costs.

And now before entry of judgment the plaintiffs move that the judgment below be reversed *pro forma* and the cause remanded, to the end that the report may be recommitted to the referee for him to revise his finding in respect of the ownership, custody and control of the tiles, because, it is said, that point was not regarded by plaintiffs' counsel as very material, and was not given much prominence before the referee; and counsel think that the finding of the referee is so manifestly wrong that on further hearing and full argument, even without more testimony, it is very certain he would change it.

When this case was here on exceptions to the directing of a verdict for the defendant—56 Vt. 519—a prominent question was, whether there was evidence tending to show that the village had the custody and control of the tiles; and it was held that there was, and that if it had, their ownership was immaterial. It also appears from papers now handed up that the point was brought to the attention of the referee by both sides, as well in requests for findings as in the briefs of counsel. It also appears from briefs used before the County Court that the matter was discussed there.

In these circumstances we know of no practice that will warrant the granting of this motion. It amounts to asking for a new trial for the purpose of experimenting with the referee for a different result.