## Illinois Central Railroad Company v. Green King.

1. MASTER AND SERVANT—*Responsibility for Misconduct of the Servant.*—For the acts of the servant within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them.

2. SAME—*Responsibility for Malicious Acts of the Servant.*—Where a servant is doing an act falling within the scope of his employment, if he also wreaks vengeance on the person or thing he is dealing with, and it is impossible to determine where the sense of duty terminates and a thirst for vengeance begins, the master is responsible for the act as a unit. The master is presumed to have possessed himself of a knowl-

edge of the quality of a servant before employing him, and can not be held blameless in putting him in a position where, in doing his master's services, he also unnecessarily, intentionally and wickedly injures another.

3. INSTRUCTIONS—*Requiring a Jury to Examine the Pleadings.*—The court dislikes to sanction the practice of sending a jury to examine a declaration to find out if the facts proven fit it.

4. SAME—*Duplicate Instructions.*—It is not error to refuse to instruct the jury more than twice on the same point.

Trespass on the Case, for personal injuries. Trial in the Circuit Court of Washington County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Affirmed. Opinion filed August 31, 1898.

### STATEMENT.

By his declaration, in an action on the case, Green King, by his guardian, Lewis Mundinger, sued appellant for forcibly, wantonly and maliciously pulling, pushing and throwing him from and off the cars of appellant's railroad, while they were in motion and increasing in speed, and for assaulting and hitting him with a stone thrown by a servant of appellant, while engaged in pulling appellee off the car, whereby appellee's foot was caught under the wheels of the car and crushed.

The immediate facts are that appellee, a colored boy, thirteen years of age, was making his way from Chicago to the South and undertook to secure transportation on appellant's road from Ashley, a station on the railroad, to Cairo, without paying his fare, and he had climbed upon the rods under the bottom of a freight car, near or over the trucks, from which, after the train had started from the station, he fell, or was pushed or pulled by a brakeman of the train, and his foot caught under the wheels of the moving car and was crushed, so that it became necessary to amputate it. He recovered a verdict of $2,000, on which the court, after overruling a motion for a new trial, rendered judgment, and the railroad company brings the case here by appeal, and assigns as errors, that the evidence is insufficient to sustain the verdict, and that the court

erred in giving plaintiff's instructions, as well as in refusing to give instructions asked by defendant.

Green & Gilbert, attorneys for appellant.

If a servant go beyond his employment, and without regard to his service, act maliciously, or, in order to effect some purpose foreign to his service, commit a trespass, or injure another, the master is not liable. Thomas on Negligence, 13; Mott v. Consumer's Ice Co., 73 N. Y. 543.

Where the master owes no duty to the injured party and his liability only arises as a legal conclusion from the relation of master and servant, he is not liable for his servant's malicious trespass or criminal act, where such servant, in performing such act, has not as his motive the furtherance of the master's business. *Vide* Wright v. Wilcox, 19 Wend. 343; Mali v. Lord, 39 N. Y. 381; Sanford v. Eighth Avenue R. R. Co., 7 Bos. 122; Croft v. Allison, 6 E. C. L. 614; N. & C. R. R. Co. v. Starnes, 9 Heisk. 52; McKeon v. Citizens Ry. Co., 42 Mo. 79; Story on Agency, Sec. 456; Angell on Carriers, Sec. 684.

Where the authority given the servant only authorizes the employment of usual and lawful means, the master is not liable for illegal and criminal acts on the part of the servant. Crocker v. N. L. & C. Ry. Co., 24 Conn. 249; Noyes' Maxims, Chap. 44; Lyon v. Martin, 8 A. & E. 512; Poulton v. L. S. & W. Ry. Co., L. R. 2 Q. B. 534; Foster v. Essex Bank, 17 Mass. 479; Thames S. S. Co. v. H. Ry. Co., 24 Conn. 40; Cooley on Torts, 535, 536.

Even if a servant is engaged in the performance of his duty to his master, yet if he personally and wholly for a purpose of his own does an act not connected with the business of such master and not intended by him to further the objects of his employment, the master is not liable for an injury thereby occasioned. C., B. & Q. R. R. Co. v. Epperson, 26 Ill. App. 79; C., B. & Q. R. R. Co. v. Casey, 9 Ill. App. 632.

The company is not liable for the torts of a servant outside of the course of his employment, as when he is acting

with a view to effect an independent purpose of his own and not to execute the orders of the company; and he is not deemed in such act to be its servant, although employed generally, at the time, in its service. Pierce on Railroads, p. 279. A railroad company is not liable for assaults committed by its servants on a person who is not in any sense a passenger. Wharton on Negligence, p. 168; Porter v. R. R., 41 Iowa, 358.

Where a servant quits sight of the object for which he is employed, and, without having in view his master's orders, pursues that which his own malice suggests, his master will not be liable for such acts. McManus v. Crickett, 1 East, 106.

Where an agent or servant in a particular business goes outside of his employment or beyond his authority in discharging his duties, the master will not be liable for his acts. He is liable only for acts done within the scope of his authority. Pritchard v. Keefer, 53 Ill. 117; Green v. Town of Woodbury, 48 Vt. 5.

The tortious act must be actually within the scope of the servant's employment, and done in good faith in the interest of the master. This liability rests upon the reason that in contemplation of law the master is present and does the act voluntarily, though by the hand of the servant. Being so present, with the right to control the servant in respect to it—that is to forbid it, or to require it, and to direct and control as to the manner of doing it—the master should be responsible for it as done. If it be an act in respect to which he has no such right, as between him and the servant, and by virtue of their contract and relation, there would be no reason or justice in holding him responsible for it. *Vide* I. C. R. R. R. Co. v. Ross, 31 Ill. App. 177; also The Springfield Engine & Threshing Co. v. Greene, 25 Ill. App. 116, 117.

VERNOR & CARSON and JAMES A. WATTS, attorneys for appellee.

Where the servants of the company while in the dis-

charge of their duty pervert the appliances of the company to wanton and malicious purposes to the injury of others, the company is liable for such injuries. Chicago, Burlington & Q. R. R. v. Dickson, 63 Ill. 151.

Although a plaintiff may be guilty of negligence in permitting his animals to get on a railroad track, it is still the duty of the company to use ordinary skill and prudence to avoid doing them injury, and failing in this, it is liable. Rockford, Rock Island R. R. v. Irish, 72 Ill. 404; Illinois Central v. Middlesworth, 46 Ill. 494.

"If an engineer invites a person to ride with him on the engine, this act will not be within the scope of any duty he owes to his master, and if injury happens to such person as result of getting on, the master will not be liable; 'but if engineer invites a boy of seven years to get on the engine, in violation of his duty, and then invites the boy to get off while engine is in motion, and the latter is injured in getting off, the company will be liable.'" Chicago, Milwaukee & St. P. R. R. Co. v. West, 125 Ill. 320.

The rule is well recognized in this State that the master is liable not only for careless acts, but also for the willful and malicious acts of his servants, while acting within the scope of his duty and employment. Chicago City Ry. Co. v. McMahon, 103 Ill. 485.

Although a party may be guilty of negligence in putting himself in a place where he has no right to be, yet the other party, even in the performance of its lawful business, may not wantonly or willfully injure him, and if its servants, with a knowledge of the party's danger, fail to use ordinary care to avoid injuring him, the company will be liable for the injury. Chicago West Div. Ry. v. Ryan, 131 Ill. 474.

MR. JUSTICE BIGELOW delivered the opinion of the court.

It was not contended on the part of plaintiff below, nor is it contended by his counsel here, that the boy was not a trespasser, or that the railroad company owed him any duty more than it owed any other stranger, but the contention was, and is, that the acts of the brakeman in removing

the boy from the place where he was situated while the train was in motion and increasing in speed, were willful and malicious, and that the master is accountable for the consequences.

On the other hand, it is contended by counsel for appellant, first, that the evidence was insufficient to warrant the jury in finding, as they must have done, that the brakeman assaulted the boy, or did more than to order him not to get on the train; and, second, that if the brakeman did assault the boy, and forcibly remove him from the train while in motion, and in consequence thereof the boy was injured as claimed by him, still the railroad company is not liable for the injury, since the uncontradicted evidence shows that the instructions of the master to its servants were to stop the train and then put off persons who attempted to beat their way over the road without paying fare; and it also shows that the train was not stopped and that the injury was received while the train was in motion, and that therefore the brakeman is the only party liable for the injury which he willfully and maliciously did.

As to the first contention, the boy testified that the brakeman cursed him, and not only ordered him off the train, but forcibly pulled him off and at the same time threw and hit him with a rock, causing him to fall under the wheels of the car, which crushed his foot.

McNail, another witness, testified that he was standing on the sidewalk, waiting for the train to pass, and saw the boy on the rods under the car, and saw the brakeman come down the side of a car and run alongside of the train to where the boy was and commence cursing the boy, and that he had hold of the car with one hand and was grabbing with the other hand, and snatching at something under the car; that the brakeman stooped down and gathered up something and threw it, and was "hollering all of the time." He did not see the brakeman get hold of the boy, because the brakeman was between the boy and the witness and the train was running away from witness; that immediately after the brakeman picked up something and threw it at

the boy he climbed up the car, when witness seeing the boy was hurt, immediately went to him and found his foot crushed.

Van Smith, the conductor of the train, and a witness for appellant, testified that after the train stopped at Du Quoin, the brakeman said he "put a colored boy off at Ashley."

On the part of the defendant, the brakeman, Adams, testified he did not touch the boy or make any attempt to put him off, and did not throw anything at him.

The engineer of the train testified that he did not see the brakeman trying to get the boy off.

It is insisted by counsel for appellant that the boy made contradictory statements to Dr. Berry, his physician, as to the manner in which he met with the injury, but the following is the testimony of the witness as abstracted:

" When I first asked him how he came to get hurt, he told me that the brakeman hollered at him, 'You little black son of a bitch, get off there,' and that he jumped off. As he went to get back on, the brakeman threw and hit him with a rock and he fell and his foot went under the car; and at the first statement, made up at the office, before I commenced to give him chloroform, I told him not to tell me any lies at all about it; to tell me the truth, as I wanted to know something about where he belonged; and I asked him where he lived and about his parents, because I did not know whether he would come out of there alive, and I wanted to know what to do with him and where to send. I again asked for a statement and I told him to tell me the truth about it, and he said then the brakeman jerked him off the train and threw and hit him with a rock, and that made him fall and his foot went under the train. That is the best of my recollection now—what he said the second time. He made this statement just as he made it to-day, several days after the amputation."

To rebut this testimony of the doctor, the nurse of the plaintiff testified that the boy was out of his right mind for days after he was injured and did not know what he was saying on account of the severe pain he was suffering.

When all of the evidence is considered, it can not be said that the verdict of the jury should have been set aside because it was against the weight of it.

Upon the second point made by counsel for appellant, it can not be said that the authorities are entirely harmonious, but it would extend this opinion to too great a length to attempt a review of them here.

Some of the earlier decisions in New York and some of the other States, as well as in England, seem to hold that for the willful act of the servant, though done while engaged in the business of the master, the master is not responsible, but the trend of the later decisions is the other way.

In the case of Mott v. Consumers' Ice Company, 73 N. Y. 543, the court says : " The rule recognized in all the recent cases, and which does not materially conflict with any of the older decisions, although it may qualify some of the intimations and casual expressions or illustrations of the judges, is, that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible whether the act be done negligently, wantonly or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them." This we believe to be the true rule.   C. C. Ry. Co. v. McMahon, 103 Ill. 485; C. W. Div. Ry. Co. v. Ryan, 131 Ill. 474; I. C. R. R. Co. v. Ross, 31 Ill. App. 170.

The primary requirement by the railroad company of the brakeman, was that the boy should be put off the train; but it is insisted that this requirement only carried with it " the employment of usual and lawful means " to do the act, and that when the servant went beyond the use of such means, the master was not acting through the servant, but the servant had dominated the master, and the servant alone became responsible for the consequences.

Such reasoning leads directly away from the rule announced, and would shield the master from liability for any

willful misconduct of the servant not done by the express command or in the immediate presence of the master.

The reason of the rule announced is that when an act is done by a servant that is required by the master, the mere quality of the doing of the act does not destroy the act itself, as coming from the master, and make it proceed, as to third persons, as coming from the servant alone. If it did, the master would seldom, if ever, be responsible for the acts of reckless servants. When a servant is doing an act falling within the scope of his employment, if he also wreaks his vengeance on the person or thing he is dealing with, it is absolutely impossible to determine where the sense of duty terminates and a thirst of vengeance commences, and hence the law holds the master responsible for the acts as a unit, if for no better reason than that the master is presumed to have possessed himself of the knowledge of the quality of a servant before employing him, and can not be held blameless in putting the servant in a position where, in doing his master's service, he also unnecessarily, intentionally and wickedly injures others.

We are unable to hold that the acts of the brakeman were not the acts of the master in whose service he was, or that the verdict of the jury was wrong, for the reason stated in appellant's second point contended for.

The instruction given for plaintiff, to which objection is made, is as follows:

1. "The court instructs you that if you believe from the evidence that the injury complained of was wantonly and willfully inflicted, as charged in the declaration, then the plaintiff will be entitled to recover, although you may believe from the evidence that plaintiff was guilty of some negligence."

The only objection urged against it is that it did not tell the jury that the servant who was the cause of the infliction of the injury must have been "acting in the line of his employment." On looking at the declaration we find it specific enough to obviate the objection, but we dislike to sanction the practice of sending a jury to examine a declaration to find out if the facts proven fit it, and hence we

hold the omission was cured by other instructions which fully covered the point, as will hereafter be seen.

Appellant's instruction directing the jury to find the defendant not guilty was properly refused. The remaining two refused instructions of appellant, with the reasons of the court for not giving them, are as follows :

"The court instructs you that there is no charge of negligence against defendant in the declaration, and plaintiff can not recover in this case unless the brakeman mentioned by the plaintiff was in the regular discharge of his duty when the accident happened."

(Refused because other instructions given to the same effect.)

"And even if you believe from the evidence that the plaintiff was wantonly and maliciously pulled from under the cars by the brakeman of the defendant, yet, unless you believe from the evidence that the brakeman was in the discharge of his regular duty and employment in pulling the plaintiff from under the car, you should find the defendant not guilty."

("Refused because another instruction given to the same effect.")

One of the instructions given for defendant is as follows:

"The plaintiff can not recover in this case unless you believe from the evidence that he was injured in consequence of the acts of the brakeman of the defendant, done in the line of his duty."

Another instruction given for defendant contained the same thing, hence the court committed no error in refusing to instruct the jury more than twice on the same point.

Finding no error in the record, the judgment is affirmed.