### Alton Railway and Illuminating Co. v. James C. Cox.

1. MASTER AND SERVANT—*Liability for Torts.*—The master is liable for the torts of his servant growing out of acts within the scope of his employment.

Trespass.—Trial in the Circuit Court of Madison County; the Hon. WILLIAM HARTZELL, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the February term, 1899. Affirmed. Opinion filed September 5, 1899.

LEVI DAVIS and HENRY S. BAKER, attorneys for appellant.

Where a person violently assaults the servant engaged in the lawful performance of his duty, and the latter thereupon resents and responds to the attack by resorting to great and unnecessary violence, the master will not be liable in damages for personal injuries thus inflicted if the assault made upon its servant was of such a nature as to excite his passions and render him unfit for properly performing the duties devolving upon him in the premises. Higgins v. Railway Co., 98 Ga. 751 25 S. E. Rep. 837; Peavy v. Railroad Co., 81 Ga. 485 8 S. E. Rep. 70; Railway Co. v. Christian, 97 Ga. 56, 25 S. E. Rep. 411; Railroad Co. v. Richmond, 98 Ga. 495, 25 S. E. Rep. 565; City Electric Railway Co. v. Shropshire, Sup. Court of Georgia, May, 1897, 3 American Negligence Reports (Current Series), 369.

J. E. Dunnegan, attorney for appellee.

The principal is liable to third persons where the agent, though authorized to use reasonable force or proper means, negligently or willfully and maliciously uses excessive force or improper means in the course of his employment, by reason of which such third persons receive injury. It is immaterial in this respect whether the excessive force or improper means be the result of lack of judgment or careless inattention, or active willfulness; if the act be done in the course of the employment, the principal is liable. Mechem on Agency, Sec. 742; Cooley on Torts, 2d Ed., 626.

Mr. Justice Bigelow delivered the opinion of the court.

This suit was trespass, brought by appellee against appellant and the declaration alleges that the defendant assaulted the plaintiff and violently struck him in the face with a stone. The case was tried by a jury, who returned a verdict for plaintiff for $200, and defendant appealed to this court.

Some of the facts are disputed and some are not.

The undisputed facts are that appellant had possession and control of a small park, situated near the northeasterly limits of the city of Alton, known as " Rock Spring Park." It was used as a playground and place of recreation for patrons of appellant during the summer season. At other times it was supposed to be closed, and while, at the time of the occurrence that brought about this suit, it was not fully inclosed by a fence, notices were posted that no admittance or trespassing would be allowed on the grounds. The park was taken care of by a superintendent named Kemp, who was employed by appellant for that purpose, and who resided near the grounds, the front of which lay along a public road or street on which appellee resided, a short distance east of the park.

Kemp testified that his orders were to keep all persons out of the park, and that he was obeying his instructions in ordering appellee and his party out.

Shortly after six o'clock in the evening of April 17, 1897,

appellee, accompanied by his wife and daughter, his son and son's wife, walked down the street in front of the park and went into the park for the alleged purpose of examining some peculiar stones there, and soon after they got in Kemp saw them and ordered them off the grounds. They started to go out, when a short controversy of words occurred between appellee and his son and Kemp as to the latter's authority to put them out, when Kemp, claiming to be a public officer, threatened to arrest the party. As to whether appellee first struck Kemp with his cane there is a conflict in the evidence, but there is none about the fact that Kemp threw one or more stones at appellee, hitting him on the nose, knocking him down, breaking his nose and seriously injuring him.

Appellee was sixty-eight years old, had been wounded in the spine, and in consequence was afflicted with *locomotor ataxia*.

The principal reason urged by counsel for appellant why the judgment should be reversed is stated by them as follows:

" The master is not liable for a tort of the servant, growing out of acts within the scope of the employment, where the tort is separated from all that preceded it and is clearly distinguishable as to time, motive and object, and is on purely personal account."

There can be no doubt but the general rule of law is thus correctly stated, but the doubt about the matter is whether the facts are such as those in the cases to which the rule has been held to apply.

The tort then, not being denied, the first question is, was it committed at a time when Kemp was not engaged in removing appellee and his party from the park?

The testimony of Kemp shows that when he first came near where the party were, he exclaimed in a loud voice: " There isn't any one allowed in here; you will have to go out." When remonstrated with, that he ought not to talk as he was talking in the presence of ladies, he replied: "I have had to put out as good people as you, if not better."

At this time the evidence shows that the parties were on

Alton Ry. Illuminating Co. v. Cox.

their way out of the park and Kemp was with them, and immediately thereafter the stones were thrown which hit appellee. It seems impossible to separate the acts of the parties as to time. The words and acts seem to have been immediately connected as one thing. The injury was done in the act of getting appellee and his party out of the park, and Kemp, evidently was excited and angry all of the time, or he would not have called to his family, as he did, to bring him his gun; and his explanation for so doing, that he sometimes used it " to kill muskrats," was evidently an afterthought.

That Kemp's object was to get appellee and his party out of the park as soon as possible, and by any possible means, is apparent from his evidence; and what he did was not on account of any matter personal to himself that we are able to discover from the evidence, but it was done in the performance of his duty, as he understood it in his excited state of mind.

A question similar to the one raised here was lately determined by this court in the case of I. C. R. R. Co. v. King, 77 Ill. App. 581 (affirmed by the Supreme Court, 179 Ill. 91), and we refer to the authorities there cited and to what was said in that case, as expressing the rule of law applicable to the facts in this case.

It is also urged that the court erred in excluding from the jury the evidence of appellant's witnesses Benbow and Dr. Burnap, as to whether appellee was a person of a quarrelsome character. The court allowed the evidence to go to the jury, but afterward excluded it from the jury, and in so doing committed no error.

We discover no error in the record for which the judgment should be reversed, and hence it is affirmed.