SYLVESTER A. PLOOF v. HENRY PUTNAM.

October Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 7, 1910.

*Master and Servant—Injuries to Third Persons by Acts of Servant—Mistaken Execution of Lawful Authority—Implied Authority—Scope of Employment—Instructions.*

A master is liable for the wilful and malicious act of his servant, done in furtherance of the master's business and within the scope of the servant's employment, but not for such act done to effect some purpose of the servant alone.

To sustain an action against a master for injuries caused by his servant's act done in excess, or mistaken execution of lawful authority, it must be shown that the servant intended to do, on behalf of his master, something of a kind that he was in fact authorized to do, and that the act, if done in a proper manner, or in proper circumstances erroneously supposed by the servant to exist, would have been lawful.

Where a caretaker had sole charge of defendant's island in a lake, and was impliedly authorized to keep off trespassers and intruders, his act in unmooring plaintiff's sloop from defendant's wharf and refusing to permit plaintiff to tie thereto in a storm was within the apparent scope of the servant's authority.

Where defendant's servant in charge of defendant's island in a lake, pursuant to his instructions to keep off trespassers, unmoored plaintiff's sloop from defendant's dock and refused to permit plaintiff to tie thereto in a storm, in consequence of which the sloop and her cargo were lost, and plaintiff and his family thrown into the lake and injured, the servant's act, though ordinarily proper and lawful, was unlawful in the circumstances, and defendant is liable therefor, unless done by the servant from caprice, or to serve some purpose of his own.

Whether a servant acts within the scope of his employment and whether he acts in his own behalf or on behalf of his master are usually questions of fact for the jury; but where the facts and

the resulting inferences are not in dispute the court may dispose of those questions as matter of law.

Where defendant's servant testified that in furtherance of defendant's orders he unmoored plaintiff's sloop from defendant's dock and refused to permit plaintiff to tie thereto in a storm, and there was nothing to indicate that the servant by this act did anything to further any interest or caprice of his own, the court properly instructed that in so doing he was acting within the scope of his employment as defendant's servant, so that defendant stands as though he were present and did the act himself.

TRESPASS AND CASE for damages resulting from unmooring plaintiff's sloop from defendant's dock. Plea, the general issue. Trial by jury at the March Term, 1909, Chittenden County, *Taylor*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The evidence showed that on November 13, 1904, defendant owned an island in Lake Champlain and a certain dock thereto attached, both of which were in charge of a caretaker in defendant's employ; that plaintiff on that date was sailing on the lake a sloop, in which were his wife and two minor children, when a sudden storm arose, and, to save the sloop and the property from destruction, and plaintiff and his family from injury, he was compelled to, and did, moor his sloop to defendant's dock; that plaintiff's said caretaker thereupon unmoored the sloop, in consequence whereof it was driven on shore without plaintiff's fault, where its contents were destroyed, and plaintiff and his wife and children were cast into the lake and on the shore, receiving injuries. The caretaker testified that previous to November 13, 1904, defendant wrote to him that he did not care to have boats tie up to said dock; that there was good anchorage there and he did not care to have them tie to his dock; and further testified that in casting off the line he was acting in furtherance of defendant's orders. It was conceded that the dock in question was a strictly private one.

*Batchelder & Bates* and *Charles H. Darling* for the defendant.

The defendant is not liable. The general employment of the caretaker did not authorize him to do the act complained of.

The act was the wilful act of the caretaker, done beyond the scope of his employment. *McKenzie* v. *McLeod,* 10 Bing. 385. In *McManus* v. *Crickett,* 1 East. 107, Lord Kenyon said: "When a servant quits the sight of the object for which he is employed and without having in view his master's orders pursues that which his own malice suggests he no longer acts in pursuance of the orders given him." So are all the cases. *Railroad* v. *Kentle,* 16 Am. & Eng. R. R. Cases 337; *Wright* v. *Wilcox,* 19 Wend. 344; *Way* v. *Powers,* 57 Vt. 135; *Walton* v. *Railroad,* 139 Mass. 556; *Cosgrove* v. *Ogden,* 49 N. Y. 255; *Maddox* v. *Brown,* 71 Me. 432; *Stone* v. *Hill,* 45 Conn. 44; *Phelon* v. *Stiles,* 43 Conn. 426; *Flower* v. *Railroad,* 8 Am. Rep. 251; *Dillingham* v. *Russell,* 15 Am. St. Rep. 753; *Marion* v. *Railroad Co.,* 13 N. W. 415; *Stevenson* v. *Railroad,* 27 Am. Rep. 273.

*Martin S. Vilas* and *Cowles & Moulton* for the plaintiff.

"The rule is now well settled that the master is liable for the malicious and tortious acts of his servant, done in the scope and within the course of his employment, even though the master did not authorize or ratify them, and even though they were in express disobedience to the master's orders." *Postal Tel. Co.* v. *Brantley,* 107 Ala. 683. "And it makes no difference that the master did not know of the act or disapproved it, or even forbade it, provided the servant was acting at the time for the master and within the scope of the business entrusted to him." *Palmer* v. *St. Albans,* 60 Vt. 427; *New Orleans etc. R. Co.* v. *Hanning,* 15 Wall. 649, 21 L. Ed. 220; *Johnson* v. *C. V. R. R. Co.,* 56 Vt. 707; *Railroad Co.* v. *Reedy,* 17 Ill. 582; *Railroad Co.* v. *Harmon,* 47 Ill. 298; *Phila. Reading, etc. Co.* v. *Derby,* 14 How. 468, 14 L. Ed. 502. "The test of the master's responsibility for the act of the servant is, not whether such act was done according to the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed by the master to do." *Cosgrove* v. *Ogden,* 49 N. Y. 255; *Garretson* v. *Duenkel,* 50 Mo. 104. "The course of employment, in the sense in which it is used in regard to the duties imposed by the particular service is not to be understood as restricted and confined to the prescribed duties set apart for the performance of the servant. Whatever may be incident to

the employment must necessarily belong to it.'' *Redding* v. *So. Car. R. Co.*, 3 S. C. 1, 16 Am. Rep. 681; *Southern Ry. Co.* v. *Wildman*, 119 Ala. 565, 24 So. Rep. 764; *Sleath* v. *Wilson*, 9 Carr & Payne 607; *Railroad Co.* v. *Derby*, 14 How. 468, 14 L. Ed. 502; *Palmer* v. *St. Albans*, 60 Vt. 427.

POWERS, J. It was formerly held, usually on the authority of *McManus* v. *Crickett*, 1 East 106, that a master was not answerable for the wilful or malicious act of his servant, though done in the line of the servant's duties, unless he directed or assented to it. Accordingly, it was said by ALDIS, J., in *Andrus* v. *Howard*, 36 Vt. 248, that ''the master is not liable for the wilful wrong or trespass of the servant, though the act be done while employed in the business of his master.'' But this doctrine is now pretty generally repudiated, and it has come to be well settled that a master is liable for the act of his servant, though it be wilful and malicious, when it is done in furtherance of the master's business and within the scope of the servant's employment. The primary test, then, is, not the character of the act itself, nor whether it was done during the period of employment, but whether it was done to carry out the directions of the master, express or implied, or to effect some purpose of the servant alone. This rule was fully recognized and approved in *Palmer* v. *St. Albans*, 60 Vt. 427, 13 Atl. 569, 6 Am. St. Rep. 125, wherein it is said: ''The rule of *respondeat superior* is of universal application, whether the act be one, of omission or of commission, whether negligent or fraudulent. And it makes no difference that the master did not know of the act, or disapproved it, or even forbade it, provided the servant was acting at the time for the master and within the scope of the business entrusted to him. * * * But the foundation of the rule is the relation of master and servant. When that does not exist, the law does not impute to one man the negligence of another. * * * Hence, the modern cases all show that it is not enough in order to charge one man with the negligence of another, to show that the latter was acting at the time under the employment of the former; but you must go further and show that the employment created the relation of master and servant between them;''—that is to say, of course, the relation of master and servant as to the very act of which complaint is made. Acts are here spoken of as ''negligent or fraudulent,'' but in

this connection fraud stands the same as other torts. *Barwick* v. *English Joint Stock Bank*, 2 L. R. Ex. Cas. at p. 265. So far we can proceed without much difficulty. Indeed the defendant's brief does not seriously controvert the rule as above stated. But an attempt to apply the rule to the varying circumstances of the numberless cases which have already arisen under it has led to much perplexity and confusion. In Pollock's Torts, (7th Ed.) at p. 82, the injuries in respect of which a master becomes subject to this kind of "vicarious liability" are helpfully classified as follows:

(a) Such as are the natural consequence of something being done by a servant with ordinary care in execution of the master's specific orders.

(b) Such as are due to the servant's want of care in carrying on the work or business in which he is employed.

(c) Such as result from an excess or mistaken execution of a lawful authority.

(d) Such as result from a wilful wrong, such as an assault, provided the act is done on the master's behalf and with the intention of serving his purposes.

The case in hand falls within class c or class d. It is further said by the author referred to at p. 87, that to establish a right of action against the master in cases covered by class c, it must be shown that (1) the servant intended to do on behalf of his master something of a kind which he was in fact authorized to do; (2) the act, if done in a proper manner, or under circumstances erroneously supposed by the servant to exist, would have been lawful.

In determining what acts are within a servant's authority, courts are not usually confined to his express instructions. Regard should be had to the character of the work, the situation of the parties, and the surrounding circumstances. Certain implied authority goes with the relation, usually if not always. In the much quoted language of Mr. Justice BLACKBURN in *Allen* v. *London, etc. Ry. Co.*, L. R. 6 Q. B. 65, implied authority in a servant will be inferred to do all those things that were necessary for the protection of the property intrusted to him or for fulfilling the duty which he has to perform.

So this man Williams who was the defendant's caretaker and had sole charge of his island in Lake Champlain, was clothed

with implied authority to keep off trespassers and intruders,—
and this, without regard to his written instructions that the de-
fendant did not care to have people tie up to his wharf.   Author-
ity to use such force as might be necessary to accomplish this is
implied from the character of the work.   26 Cyc. 1541; *Alton
Ry. & Illuminating Co.* v. *Cox*, 84 Ill. App. 202; *Brennan* v.
*Merchant & Co.*, (Pa.) 54 Atl. 891.   The whole story is con-
densed into an admirable statement of WILLIS, J., in *Bagley* v.
*M. S. & L. R. R. Co.*, L. R. 7 C. P. at p. 420:   "A person who
puts another in his place to do a class of acts in his absence
necessarily leaves him to determine, according to the circum-
stances that arise, when an act of that class is to be done, and
trusts him for the manner in which it is done; and consequently
he is held answerable for the wrong of the person so intrusted
either in the manner of doing such an act, or in doing such an
act under circumstances in which it ought not to have been done;
provided that what was done was done, not from any caprice
of the servant, but in the course of the employment."   When
Williams cast off the plaintiff's rope, he was doing one of a class
of acts well within the scope of his employment.   One which
under ordinary circumstances would be proper and lawful.   But
in the peculiar circumstances then existing, the act was improper
and unlawful,—it was done under circumstances in which it ought
not to have been done,—and the defendant is responsible, whether
it was done carelessly or wilfully, unless it was done from the
caprice of Williams, that is, to serve some purpose of his own.
In other words, if Williams cast off the rope intending thereby
to carry out his instructions and perform his duty as caretaker
of the property, the defendant is liable; if he cast it off, not for
this purpose, but only to serve some purpose of his own, the
defendant is not liable.

The books are crowded with cases supporting this doctrine,
a few of which we take time to refer to by way of illustration:

In *Letts* v. *Hoboken, etc. Co.*, (N. J.) 57 Atl. 392, the dec-
laration charged that the defendant as owner of certain prop-
erty employed a watchman to prevent persons from trespassing
thereon, and that the watchman, within the scope of his employ-
ment and acting for the owner, in ejecting a person from the
premises, made an assault upon him, from the effects of which
he died.   It was held that it stated a cause of action,—the court

saying, ''authority given by the master to his servant to eject trespassers from the former's premises charges the master with the liability for the act of the servant in using excessive or inappropriate force in removing one who was a trespasser.''

In *Brennan* v. *Merchant & Co., supra,* a boy eight years old climbed onto a moving truck of the defendant, then in charge of a driver, and held on to a standard. The driver, without warning, struck the boy's hand with his whip, and the boy fell off and was injured. The plaintiff was non-suited below, and this was held error. ''If his act,'' says the court, ''in striking the boy was intended to remove him by force from the wagon, it would be the act of his employer, for which the latter would be responsible. If, on the other hand, the purpose of the driver was not to cause the boy to leave the wagon, but to inflict punishment upon him, to gratify the ill will of the driver, the defendant company is not responsible for the wrongful or tortious act.''

In *Hammond* v. *Grand Trunk Ry. Co.,* 4 Ont. W. Repr. 530, a watchman was employed at a crossing to raise and lower the gate by means of a lever in a structure near by. He was to lower the gate while a train was passing, and raise it immediately afterwards. The plaintiff, a boy of sixteen, reached the crossing when the gate was down and stood leaning upon it while a train passed. After the train had gone by, he and his companions did not immediately remove their weight from it, as the watchman ascertained as he attempted to raise it. Whereupon he picked up a cinder and threw it towards the plaintiff, hitting him in the eye and destroying it. The court said that the act of throwing the cinder was one for which the master might or might not be answerable. ''If the act were done out of mere malice and ill temper and to punish the boy, the company would not be answerable; but if it were done for the purpose of warning him to get off the bars so that they might be raised, then it is clear that they would be answerable, although the act done was a tort.''

In *Alton Ry. & Illuminating Co.* v. *Cox, supra,* the company had a small park near the city of Alton, which was used during the summer as a pleasure resort. At the time in question it was closed and in the charge of a superintendent who had orders to keep all persons out of it. He testified that in the

acts complained of he was obeying his instructions. Cox and some others entered the park, and were ordered out by the superintendent. They got into an altercation and the superintendent threw a stone at Cox which hit and injured him. It was held that it was apparent that the superintendent was acting for his master and in the performance of his duty as he understood it and not on account of any matter personal to himself, and a recovery was sustained.

The instruction of which the defendant complains and to which he excepted was that it was established by uncontradicted evidence that Williams cast off the rope, and "that in so doing he was acting within the scope of his employment as a servant of the defendant. * * * * So that * * * the defendant stands as though he had been present and had himself done the act. * * *" The questions whether a servant acts within the scope of his employment and whether he acts in behalf of the master or in his own behalf are usually questions of fact and so are for the jury. Note to *Goodloe* v. *Memphis etc. R. R. Co.,* (Ala.) 52 Am. St. Rep. at p. 85; *ib.* at p. 89. But this is not always so, and the usual rule prevails in these as in other cases:—If the facts and the inferences to be drawn therefrom are not in dispute, the court may dispose of these questions as matter of law. *Brennan* v. *Merchant & Co.,* (Pa.) 54 Atl. 891. So it remains to inquire whether there was any conflict in the evidence on these important questions in the case in hand.

As we have already seen, the act of casting off the rope of one attempting to tie up to that wharf would, ordinarily, be within the scope of Williams' employment. He testified that he threw the plaintiff's line off in furtherance of his employer's orders, and that he so informed the plaintiff at the time. The only evidence disclosed by the record which could in any view be claimed to have a tendency to contradict this, comes from Williams himself when he testifies that, after he told the plaintiff that the defendant did not allow boats to tie up there, the plaintiff swore at him, called him an opprobious name, and threatened him. There is nothing in this fact alone which tends to show that Williams thereupon cast off the rope for any purpose of his own. It does not appear that he was angered, or even irritated by it. And we cannot infer that he was in order to find error. Nothing appears to indicate that he had any personal interests

to serve, or that in the slightest degree, he turned aside from the line of duty as he then understood it or did anything that he would not have done. In these circumstances the court was right in the instruction given; the act being within the scope of the agency and done for the master's benefit, the defendant's liability was the same as if he had done it himself. *Rochester* v. *Bull,* 58 S. E. 766; *Columbus R. R. Co.* v. *Woolfolk,* (Ga.) 58 S. E. 152, 10 L. R. A. (N. S.) 1136.

In the foregoing discussion we have excluded from consideration (1) cases in which a special duty is imposed upon the master toward the person injured, arising out of the relation existing between them,—like carrier and passenger, inn-keeper and guest, and such like; (2) cases in which an absolute duty is imposed upon the master,—by statute, for instance; and (3) cases in which the injuries result from certain dangerous agencies intrusted to the servant by the master,—like wild animals or high explosives; all of which are said to be exceptions to the rules herein applied. Nor have we referred to cases in which the servant acts outside of the scope of his employment though attempting in good faith to further his master's interests; which are said not to afford any ground of action against the master.

*Judgment affirmed.*