WILLIAM FERRIS, ADMINISTRATOR, RESPONDENT, v. FRANK McARDLE, APPELLANT.

Submitted December 9, 1918—Decided March 3, 1919.

It was the practice of a servant in driving an auto from his master's residence to a garage some distance away, to stop at his home for supper when he had been driving for his master until late in the day, and after supper to take the auto to the garage and wash it. This practice was known to the master and, as he testified, accepted by him as a matter of course. As the servant was, late in the day, driving the auto from the master's residence to the garage, he deviated from the most direct course in order to go to his home for supper, and before reaching his home ran into and killed the plaintiff's intestate. The court was requested by defendant to instruct the jury that neither permission, express or implied, allowing the driver to stop at his home for supper, on his way to the garage, or acquiescence in the practice, constituted the driver the servant of defendant while driving home, and if the accident happened while driving home for supper, the defendant was entitled to a verdict even though he permitted it to be done, or acquiesced in the practice. *Held*, that the request was properly denied.

On appeal from the Hudson County Circuit Court.

For the respondent, *Mark Townsend, Jr.*

For the appellant, *J. Emil Walscheid.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff has a judgment for damages resulting from the killing of his intestate, by collision on a public street with defendant's auto, and the latter appeals.

There was evidence from which a jury might infer that plaintiff's decedent and her sister were crossing Ocean avenue, in Jersey City, from the corner of that avenue and Ege avenue, the deceased being about five, and her sister ten, years of age; that a trolley car was approaching on one of the tracks on Ocean avenue, in front of which they passed, and

while on the next line of tracks apparently hesitated, stepped back a foot or two, and then started to run to the other side of Ocean avenue; that the servant of defendant, driving defendant's auto along the second line of tracks, undertook to turn out to avoid the children and in doing so ran them down, killing the younger child, and did not stop the auto until it reached the curb line of Ocean avenue toward which the children were going.

The testimony as to where it did stop is somewhat contradictory, but its credibility was for the jury.

Ege avenue does not cross Ocean avenue at its point of intersection, but there was evidence from which a jury might infer that the accident happened within the lines of Ege avenue, if projected across Ocean avenue, although no crosswalk had been laid.

The defendant moved for a nonsuit and a direction, the denial of which is the first ground urged for a reversal. The reasons stated being (a) no evidence of defendant's negligence, (b) that the accident happened at a place where there was no street crossing, and therefore plaintiff's intestate assumed the risk as to the defendant owner, he not being in the car, (c) because the servant was not acting within the scope of his employment.

As to the first, we think that when the driver could see these children crossing the street, nearly in front of him, as he must if he had looked, as a jury might find, ordinary prudence required that he should have had his auto under such control as he approached along the track they were intending to cross, as to enable him to avoid running over them. What the driver saw, or ought to have seen, was two small children near, or on the track along which he was driving, with a trolley car, approaching from the same direction on the other line of tracks, which he had just passed. The children could not remain where they were without being run down by the car or auto, and to avoid this, must leave the tracks. In this position they attempted to proceed and the

driver also turned in the same direction, without attempting to stop, and ran into the children from the rear. These circumstances raised the question whether the driver had exercised prudent care towards those having an equal right in the highway, and the motions to nonsuit or direct for defendant for want of his negligence were properly refused.

The second reason, urged in support of the motions relied on, is that the deceased child took the risk in crossing Ocean avenue at a point where, it is claimed, there was no street crossing, as the accident occurred while the statute of 1915 (*Pamph. L., p.* 285) was in force, subdivision 2 of section 12 of which provides that, "Any person crossing a street at any place other than the cross-walk shall do so at his own risk." Section 1 of the act defines the word crossing to be "all duly indicated crossings marked by a pavement or otherwise, and the most direct route from curb to curb at the intersection of streets."

This undoubtedly means that where, from the nature of the pavement of the street no paved crossing at a street intersection is necessary for the convenience of the public, the most direct route across the street from curb to curb is a crossing. Otherwise any person crossing at street corners, where no crossing is marked, would do so at his own risk. Such an absurd result should not be given to a statute like this unless clearly expressed. And so in this case the action would not be barred, as defendant claims, if the injury was caused by collision within the lines of a crossing over Ocean avenue, from the corner of Ege avenue, in the most direct route from curb to curb.

The evidence on this point was conflicting, some of it tended to show that the collision occurred within the lines of the two sides of Ege avenue, if projected across Ocean avenue, and some that it happened on a line at right angles with the intersection of Ege avenue.

The contest on this point arises over the fact that Ege avenue does not intersect Ocean avenue at exactly right angles,

and that there is no marked crossing at the corner of inter-
section. The angle of intersection is very slight, and the
statute does not require pedestrians to do more than take a
direct course, which is "the usual or natural course or line,"
(*Black's L. Dict.*) and whether these children, if they kept
within the lines of Ego avenue in crossing Ocean avenue were
following a natural course in crossing the street, within the
meaning of the statute, would depend upon conditions re-
quiring the consideration of proofs, and not upon the imma-
ture judgment of a child five years old in determining the
precise angle of intersection.

We think the trial court properly submitted the question
to the jury. This renders it unnecessary to decide whether
this infant can be held to have taken the risk within the
meaning of the statute.

The trial court charged the jury that if the accident did
not happen on a crossing the plaintiff could not recover, leav-
ing the fact to be settled by the jury, and this was all the de-
fendant was entitled to.

The third point raised on this branch of the case is that
the servant was not in the service of the defendant when the
accident happened. The evidence relating to this is that the
duty of the driver was to drive and care for the auto; that
he did not live with his master, and that when he was kept
in service until late in the day his habit was to drive to his
home, get his supper, and then take the auto to the garage
and wash it; that if he had time to wash it before supper he
drove directly to the garage and did so, and that this method
was known to, and acquiesced in by his master; that on the
day in question he had been driving defendant's wife and
left her at his residence late in the afternoon, and on his
way to the garage went to his home to get his supper, and
before he reached his home the accident happened.

There was no express direction given to go to his home
for supper on the night in question, but the driver had done
the same thing many times under like circumstances, to the

knowledge of the master and without his objection; in fact, he testified that he accepted this method as a matter of course, and a jury might infer from such a course of conduct, if sufficiently continued, that it had been accepted by both parties as a part of the consideration of the employment. The master had a right to expect, when he kept his servant working so late, that he would do what he had been accustomed to do under like circumstances, and yet gave no directions to the contrary, and a jury would be justified in inferring from this that the servant had been authorized by the master to stop for his supper on his way to the garage, and to use the auto for that purpose. It is not a single digression unknown to the master, but a course of conduct well known to the master and which he must be considered to have thought beneficial to him, the exercise of which he entrusted to the servant's discretion. In *Whatman* v. *Pearson, L. R.*, 3 *C. P.* 422, cited in *Driscoll* v. *Carlin, 50 N. J. L.* (28) 31, the master was held liable where his servant, contrary to the master's orders, went to get his dinner and left his master's horse in the street unguarded, and the horse ran away and injured plaintiff's property. Whether the evidence was sufficient to support the necessary conditions was for the jury.

We find no error in the refusal to nonsuit or direct for this reason.

The next alleged error was the admission of answers by the defendant to three questions, the purpose of which was to show, as plaintiff contended, that the relationship of master and servant existed, and that the subsequent conduct of the defendant towards his servant amounted to a ratification of his acts.

The objection urged by defendant in his brief is "The answers given may just as well indicate that the defendant did not intend to ratify, confirm, approve or adopt the act of the servant, as that he did intend so to do." That contrary inferences may be drawn from testimony is not alone a test of its competency, for many answers given by witnesses which may be admissible, are subject to that criticism. The

answers to two other questions are also challenged. They related to defendant's knowledge of two women who it is said the driver took into the auto before the accident, but as their presence had no effective relation to the controversy, the answers were immaterial, and the defendant's counsel does not press this objection in his brief.

The last objection is to the refusal of the court to charge a specific request. "Neither permission, express or implied, from the defendant, McArdle, to his driver, Denty, allowing the latter to drive home to his supper, or acquiescence of the defendant, McArdle, in the practice of the driver, Denty, of driving home to his supper in the motor car of the defendant, McArdle, will constitute Denty the agent or servant of the defendant, McArdle, while so driving home; and if at the time of the accident the driver, Denty, was thus driving home to his supper, the defendant, McArdle, is entitled to a verdict, even though he permitted his driver thus to drive home or acquiesced in the practice."

This request, if acceded to, would amount to a direction for the defendant, for it ignores the fact that in taking the auto from the master's residence to the garage, the servant was clearly acting in the master's business, and assumes that a detour from the shortest route between the two points, in order that the servant might eat his supper on the way, destroyed the continuity of the service, although the master permitted it, which was in substance and effect giving the servant authority to do so. The requested instruction, shortly stated is, that as a matter of law the master was not liable, notwithstanding he authorized his servant in running the auto to the garage to deviate from the shortest route in order that he might get his supper on the way. To refuse such a binding instruction was not error, for as was said by Judge Finch, speaking for the Court of Appeals of New York, in *Quinn v. Power,* 87 *N. Y.* 535, "There may be a deviation from the servant's duty in his employment, and in the range of his master's business." When the master commits the

use of his auto to the discretion of his servant as to the route to be followed in returning to the garage, he cannot escape liability simply because the servant did not adopt the most direct course in executing his master's business, and where a servant stops on the way for a purpose of his own, with the master's consent, he continues to be in his master's service. The stop, in this case, had no influence on the tort that had happened prior and while the servant was driving the auto to its destination over a route authorized by the master. "By authorized, is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master." *Wood M. & S., p.* 576, § 307.

In the present case the requested instruction assumes that the servant was either impliedly or expressly authorized by the master to drive the auto to his home and stop for his supper on the way to the garage, which is a much stronger case in favor of the master's liability than *Whatman* v. *Pearson, supra.*

There being no error disclosed in the record, the judgment will be affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.   14.

*For reversal*—None.