HARLEY C. BROWN *v.* WALTER P. GALLIPEAU

(75 A2d 694)

May Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed October 3, 1950.

*Vernon J. Loveland* and *Donald Hackel* for the plaintiff.

*Clayton H. Kinney* for the defendant.

SHERBURNE, C. J.   This action grows out of a collision between plaintiff's automobile, while being operated by his minor son Richard, and an automobile operated by the defendant.   Trial was by court.   The plaintiff has excepted to the findings of fact and to the judgment for the defendant.

The findings show the following facts: Richard was 17 years old and lived with his parents in Castleton.   He was employed in West Rutland and his earnings were to his own use.   With plaintiff's permission he used plaintiff's automobile to go to and return from his place of employment.   He had a sister who resided in North Clarendon.   At some time prior to the accident his sister asked him to come over to her house to get some presents which she had for the family, including Richard and his parents.   On the morning of December 24, 1947, the day of the accident, Richard

asked if he could drive plaintiff's automobile to his sister's in North Clarendon to get the presents. Plaintiff permitted him to do so with the knowledge, although he had not requested it, that Richard was going to take the presents given by him and by the plaintiff and his wife to their daughter, and that he was also going to pick up some presents the daughter had for all of them. That morning, after he had received such permission, Richard drove plaintiff's automobile to his place of employment in West Rutland. Upon completion of the work day, at about 4 P. M., he proceeded, without deviation, to drive the automobile to his sister's place for the purposes mentioned, and in doing so drove easterly along River street in the city of Rutland en route to North Clarendon, and, in going through the intersection with Meadow street, collided with the defendant, who was driving in a southerly direction on the latter street. Meadow and River streets intersect at about right angles, and both were icy and slippery. There was a house and large tree at the northwesterly corner of the intersection, so that in approaching the intersection from the west Richard's vision to the left was obscured and he could not effectively see vehicles approaching the intersection on Meadow street from the north until almost in the intersection, and in approaching the intersection as the defendant was, his vision to the right was likewise obscured and he could not effectively see vehicles approaching the intersection on River street from the west until almost in the intersection. Richard looked to his right and then to his left and drove into the intersection at a speed of 25 miles per hour. As he entered the intersection he first saw the defendant's car. It was making a left turn and was about 6 feet to his left and too close to avoid a collision. Immediately prior to the collision the defendant, upon coming to the intersection, had stopped a car length from it preparatory to making a left turn onto River Street. He looked to his right, saw no vehicle approaching, and then proceeded into the intersection, turning his car to the left. As he was making the turn at 5 miles per hour he first saw the plaintiff's car when it was to his right and about 5 to 8 feet away and too close to avoid a collision. At the time of the collision plaintiff's car was about half way through the intersection and was to the right of the center of River street. Defendant's car struck plaintiff's car about in the middle. The court found that the defendant was negligent and that his negligence was a proximate cause of the accident. It also found that Richard was the servant of the

plaintiff, and that the plaintiff, acting by his servant, was negligent, and that his negligence was also a proximate cause of and contributed to the accident.

The plaintiff excepted to the last finding on the grounds that the evidence does not support a finding that Richard was the servant of the plaintiff at the time of the accident, or that he was negligent, or that any negligence of his was a proximate cause of and contributed to the accident, and that such finding or conclusion of law is not supported by the other findings or the evidence. The plaintiff also excepted to two findings that support the finding that Richard was the servant of the plaintiff, but no error in them is pointed out in his brief.

Since the last finding is a conclusion of law the previous findings are to be construed to support it if this can reasonably be done; and we must assume in its favor that the court inferred such facts from the other facts certified as it ought to have done, or might fairly have done; and we do not for the purpose of sustaining the exception thereto read into the findings something which it not there, and which is not a necessary inference from the other facts found. *Bove's Exr.* v. *Bove,* 116 Vt 76, 85, 70 A2d 562; *Abatiell* v. *Morse,* 115 Vt 254, 259, 56 A2d 464, and cases cited.

The first question to be determined is whether the findings support the conclusion that Richard was the servant of the plaintiff. In *Jones* v. *Knapp,* 104 Vt 5, 13, 15, 156 A 399, a case where we declined to adopt the so-called "family purpose" doctrine, we referred to *Doran* v. *Thompson,* 76 NJL 754, 71 A 296, 91 LRANS 355, 131 Am St Rep 671; and *Missel* v. *Hayes,* 86 NJL 348, 91 A 322. Those cases hold that to constitute the relation of master and servant as to third persons it is not essential that any actual contract should subsist between the parties or that compensation should be expected by the servant, and that while the relation of master and servant in its full sense invariably and only arises out of a contract between a servant and a master, yet such contract may be expressed or implied, and that the real test as to third persons is whether the act is done by one for another, however trivial, with the knowledge of the person sought to be charged as master, with his assent, expressed or implied, even though there was no request on his part to the other to do the act in question. This rule has been further approved in *Maiswinkle* v. *Penn Jersey Auto Supply Co.,* 121 NJL 349, 2 A2d 593. This is the rule to be applied here.

In addition to our statement of what the findings show, we take judicial notice that in driving from Castleton to his work in West Rutland, a distance of several miles, Richard traveled part way toward his sister's home in North Clarendon. Hence, when Richard asked on the morning of the accident and was given permission to drive the car to North Clarendon, the reasonable inference is that he was to continue on from West Rutland after work, as he in fact did. In connection with the finding that the plaintiff permitted Richard to drive to North Clarendon with the knowledge that he was to take his and his wife's presents to his daughter and to pick up her presents, plaintiff's assent to Richard's taking the presents is fairly and reasonably implied.

■ In an attempt to get within the rule of an independent contractor, as stated in *Rich* v. *Holmes,* 104 Vt 433, 437, 160 A 173, the plaintiff argues that Richard was free to leave at any time, proceed at any speed, stop en route, turn back, go elsewhere, or deviate in any way, and that there was no legal or physical compulsion to complete his voluntary mission. Had Richard been the owner of the automobile, or had he been a bailee of it with the right to drive it whenever, wherever or however he wished, it might be said that he was an independent contractor and not the plaintiff's servant. But the findings, construed to support the ultimate finding, only show that he had permission to use the car to drive to and from work, and to drive to his sister's after work on the day of the accident. Under such arrangement he had no more freedom of movement than he would have had had the plaintiff asked him to take the car to work and after work carry the family presents to his daughter's home. But, in view of the nearness to Christmas, having started off with the presents he was under a moral obligation at least to carry out the trust, and in view of his minority and the privileges he enjoyed, including the free use of the car, which might be taken away at the plaintiff's pleasure, it cannot be said that he was under no compulsion to complete his voluntary mission.

The findings present a situation somewhat like that in *Missell* v. *Hayes, supra.* In that case a son, at the time of an accident, was driving his father's car, which was kept for the use of the family, and the father's wife and daughter were in the car, and all three were members of the father's immediate family. Holding that this was affirmative proof that the car was being used in the father's business and was in the possession of the son as servant of the father.

the opinion goes on to state: "Under these circumstances, testimony having also been given to the effect that the son invited his mother and sister to take a ride as his guests on a trip which he was taking for his own pleasure or business and that they were doing so as such and not as members of his father's family, it became a question for the jury to decide whether they would or would not believe this testimony and the effect claimed to result from it, or whether they would entirely disbelieve it, or, at least, conclude that, while one purpose was to enable the son to make the call mentioned, he was at the same time in his father's behalf taking the members of the family out for a trip for their health and recreation as members of his father's family. If they should decide in favor of the latter alternative, then the son was clearly acting for his father and as his servant in so doing." So here, while the question of whether the use of a family car by one member to take other members to ride constitutes affirmative proof that the car is being used in the owner's business is not before us, we think that the court could rightfully conclude from the findings and the reasonable inferences therefrom that Richard, while one purpose of his trip was to go and get his sister's presents, was at the same time in plaintiff's behalf taking his and the family presents to his sister, which, so far as appears, cannot be said to be merely incidental and trivial, but was equally beneficial and important, and that in so doing Richard was the servant of the plaintiff and was in possession of the plaintiff's car as his servant, under the above mentioned rule as to what constitutes the relation of master and servant as to third persons.

█ The plaintiff has briefed exceptions for failure to comply with two of his requests for findings, but as both of these requests are in part contrary to plaintiff's testimony, that Richard asked him if he could drive the car down there after work and he told him he could, and hence unsound, it was not error to ignore the whole. *McClary* v. *Hubbard,* 97 Vt 222, 240, 122 A 469; *Peck* v. *City Trust Co.,* 104 Vt 20, 29, 156 A 403; *Nelson* v. *Travelers Ins. Co.,* 113 Vt 86, 99, 30 A2d 75; *Scott's Exr.* v. *Beland,* 114 Vt 383, 396, 45 A2d 641; *Holton Est.* v. *Ellis,* 114 Vt 471, 483, 49 A2d 210.

██ Although Richard had the right of way over traffic coming from his left, as defendant was [P. L. 5110 (II), now V. S. 47, § 10,219 (II)], the fact that he was about to enter the intersection from the favored direction did not give him exclusive rights over a vehicle approaching from the disfavored direction. *Fletcher* v. *White,*

114 Vt 377, 379, 45 A2d 569; *Reid* v. *Abbiati,* 113 Vt 233, 235, 32 A2d 133; *Jasmin* v. *Parker,* 102 Vt 405, 416, 148 A 874; *Lachance, Admr.* v. *Myers,* 98 Vt 498, 504, 129 A 172. He had the right to assume, in the absence of anything to the contrary, that the defendant would observe the requirements of P. L. 5110 (III), now V. S. 47 § 10,219 (III), and approach and enter the intersection slowly and with due care to avoid accident, but the duty was reciprocal, and he was not relieved from an equal compliance with the statute. *Fletcher* v. *White, supra; Jasmin* v. *Parker, supra; Lachance, Admr.* v. *Myers, supra.* Since the precautions to be taken increase with the hazards, the restricted view made this duty all the more imperative. *Fletcher* v. *White, supra; Reid* v. *Abbiati, supra; Farraro* v. *Earle,* 105 Vt 243, 248, 164 A 886.

In view of the icy and slippery condition of the streets and the obstructed view, the court could fairly conclude that in driving into the intersection at a speed of 25 miles per hour Richard did not exercise the degree of care required by the statute, and from the findings as to the way both cars were operated, it could also fairly conclude that Richard's negligence proximately contributed to the accident.

We find no error.

*Judgment affirmed.*