### Carlton Anderson v. Fred R. Toombs

[117 A2d 250]

May Term, 1955.

Present: **Jeffords, C. J., Cleary, Chase and Hulburd, JJ., and Holden, Supr. J.**

Opinion Filed October 4, 1955.

*Ryan, Smith & Carbine* and *Alban J. Parker* for the defendant.

*Everett C. Williams* for the plaintiff.

**Hulburd, J.** This is an action of tort to recover for personal injuries resulting from an automobile accident occurring on the night of August 23, 1952. The plaintiff was a passenger in an automobile owned by the defendant and operated by one Harold E. Balch. Recovery is sought of the defendant on a *Respondeat Superior* basis.

At the close of the plaintiff's case and again at the conclusion of all the evidence, the defendant moved for a directed verdict. The motion was denied and the defendant was allowed exceptions. Although in the court below, the defendant based his motion for a directed verdict on a number of grounds, the only question relied on here is whether the evidence is such as to warrant submitting the case to the jury on the master and servant question. Viewing the evidence in the light most favorable to the plaintiff, the facts and situation were as follows.

On August 23, 1952, the defendant, Fred A. Toombs, operated a taxi business in Springfield, Vermont. Harold Balch, on that date, was employed by the defendant as a taxi driver and had been so employed for about three weeks. Balch's regular hours were "roughly from nine in the morning until eight at night." His ordinary work was in the daytime, but "in a sense of the word" he was on call at all times. The defendant offered taxicab service at night if arrangements were made the night before, or in emergencies. Balch had

occasionally done work aside from his regular hours. After Balch had finished a day's work, he took the car to his home and garaged it there for the night. The defendant had permitted this in order that the drivers might have the cars to come to work with in the morning. Balch had no permission to use the car for any purpose other than as a taxi, and the defendant from time to time checked Balch's yard and that of the other drivers to make sure they were not using the cars for their own purposes and pleasure.

The car which Balch drove for the defendant was a 1951 4-door Chevrolet Sedan. It was "tan or gray" in color. Just back of the center of the windshield on the top of the car there had been a sign saying "Taxi" with lights that would operate at either side of the sign. On the night in question, however, "the sign actually said nothing, because the sign was gone," and whether or not the lights with it were on, Balch could not recall.

Sometime before August 23, 1952, Balch had made arrangements with a group of former schoolmates for a social evening. They planned to get together on Saturday, August 23, for a dance and other activities. The group called themselves the "Pointers and Setters" and they assembled about once a year for a meeting and dance, which this year were to be held in North Springfield and Saxton's River. Early on the evening of August 23, Balch was introduced to the plaintiff, Carlton Anderson. Anderson had come to Springfield from Ludlow with a Mary Thomas (since become Mary LaChappelle) arriving at the Balch apartment about supper time. It was arranged that they all would go out together to the proposed dance and meeting. This was before Balch had finished his day's work. Balch had to go with a passenger to Claremont, New Hampshire. This he did and from this trip returned home about 9:30 in the evening. This was his last trip for the day and so far as he was concerned he regarded the normal day's business as over. He drove directly home from the trip and there joined his wife, the plaintiff and Miss Thomas. Before setting out for the evening, there was discussion amongst the group as to whose car was to be used. Mr. Anderson offered to use his car, but Mrs. Balch spoke up and said,

"no, this is our treat, we will use our car." Balch had a car of his own but it had not been in operating condition for some seven months. The four of them finally left in the defendant's car for Saxton's River and the party as planned. Balch did not communicate with his employer in any way about taking the car and he had no knowledge of it. Balch testified that he took the car for his own convenience and that the trip in question was not for the benefit or pleasure of any one except the members of the party. Neither the plaintiff nor Miss Thomas paid anything for the trip. Mr. Balch further testified that he had authority to operate the car as a taxi at all times, but that he did not have authority to use it for any other purpose.

On the return trip from the dance, just after midnight, Balch lost control of the car and an accident occurred. Mrs. Balch was killed and the plaintiff and other occupants of the car were injured.

Balch worked for the defendant for a salary of $50.00 a week plus commissions. He became entitled to a commission only if the volume of business exceeded a given figure. This it had never done in his three weeks of employment; so he had received no commission. Each Friday Balch turned into his employer what money he had taken in in operations during the preceding week. He had done this on Friday just before the accident. After the accident, he next turned over his receipts on the following Tuesday. His testimony was to the effect that included in the sum of money turned over to his employer on Tuesday was the sum of $5.00 for the use of the car the night of the accident and he said his employer "profited" to this extent from the trip. There was no evidence on the part of the plaintiff tending to show that the defendant knew he was getting $5.00 in this regard. There was no itemized settlement and the defendant had no way of knowing what the money turned in was for. The payment was described by Balch as being "pay for the use of the car" and for the "use of the automobile." He at no time said that the money represented taxi fare.

Balch testified that the established taxi fare to Saxton's River where the dance was held was $7.50 and that a normal

charge of $3.00 an hour was made for waiting and that if the car left Springfield, as it did, at 9:30 in the evening and arrived back at 12:30 it would be fair to say that the passenger fare would have been $7.50 plus $9.00 or a total of $16.50. There was not included in this figure the additional travel for a side-trip to North Springfield which was made en route.

The plaintiff, who received head injuries as well as being otherwise injured, had no memory of the trip and was unable in his testimony to add anything to his case as stated in the summary just given.

Did the trial court err in refusing to direct a verdict in the defendant's favor? This is the sole problem which has been presented for this Court's consideration and this question in turn is confined to the law governing the liability of a master for the acts of his servant.

The general rule is set forth in 5 Am Jur, Automobiles, §375 as follows:

"It is a well-established general rule that the owner of an automobile is not liable for injury or damage resulting from the negligent operation of his car by his employee while the latter is using it for his own pleasure or business. This rule applies not only to cases in which the agent or servant uses his employer's car for his own purposes without the owner's permisson or consent, but according to the great weight of authority, to cases in which the employer has consented to or acquiesced in the employee's use of the car for his own pleasure or business. * * * * Generally, in order to hold the principal or master liable for the act of his agent or servant, the relation of master and servant or principal and agent must exist at the time, and the act must be within the scope of the servant's authority."

■ Our rule in this regard, established in *Ploof* v. *Putnam*, 83 Vt 252, 75 A 277, 26 LRANS 251, and followed in *Greenough* v. *United States Life Ins. Co.*, 96 Vt 47, 117 A 332, is stated in *Gutzwiller* v. *American Tobacco Co.*, 97 Vt 281, 284, 122 A 586, 588, in the following language: "In order to hold the master liable for the acts of his servant, it must appear that the act complained of was done to carry out the directions of the master, express or implied, and not to effect some purpose of

the servant alone; or, in other words, that the act was done in furtherance of the master's business and within the scope of the servant's employment."

 When we come to consider the evidence of this case in the light of the rule just quoted, we should also have in mind what was said in *Gutzwiller* v. *American Tobacco Co.*, *supra*, at page 286. * * * "The fact that he [the servant] was using the automobile at the time for his own convenience, and not for the company under its directions, as he testified, did not affect the situation, if he was using it in furtherance of the company's business and to carry out its directions."

Thus, the fact that Balch was using the car for his own convenience will not defeat recovery, if, at the time, he was using it in furtherance of the defendant's business and to carry out its directions. In other words, although it is perfectly clear that it was not in furtherance of the employer's business that Balch and the plaintiff should go to the dance and social gathering of the "Pointers and Setters," if, in doing so Balch and the defendant's car were engaged in taxi service in getting them there, this would be in furtherance of the defendant's business.

Now the defendant's business was the taxi business. Taxis are operated for hire. Moreover they are ordinarily operated at definite, uniform rates. It was so in this case. The uncontradicted testimony was that the established fare for the trip in question was $7.50 plus $9.00 for waiting time. This is disregarding a three mile side-trip which likewise would have been the subject of a definite fixed charge. Balch testified that he paid the defendant $5.00 for the use of the car that evening but there is no evidence that he called to the defendant's attention what he proposed to turn over in that regard. The defendant testified that he doubted that any such $5.00 was included, but assuming that it was paid as Balch said, the only evidence on the amount was that it was $5.00.

In connection with this $5.00 turned in by the driver to his employer, there is the problem of whether the payment might not have been an afterthought on the driver's part. We need not concern ourselves with this, however. If the

amount turned in for the trip had corresponded to the amount of the regular taxi fare, such fact might then have afforded some basis for an inference that the car was being operated as a taxi. The amount, however, was not the amount of the regular fare so the basis for such an inference is eliminated beyond conjecture. The amount could not have represented taxi fare; it was something else.

Nor does the testimony of Balch on the nature of the $5.00 payment rescue the plaintiff. Mr. Balch was asked: "Was the $5.00 payment made for taxi fare of the occupants of the car?" This was excluded on objection. Immediately thereafter the following question was asked: "What was the $5.00 payment for, Mr. Balch?" The answer: "For the use of the automobile." At two other points in his testimony he reiterated this statement. He did not say it was taxi fare, nor could he. He had already testified that $5.00 was not the established fare. He had no authority to make it less.

If, when Balch turned in his receipts to his employer, he had called attention to what he was doing, that is, the amount he proposed to turn over in connection with this trip, and his employer had consented to take a lesser amount as fare, this case would take on a different look. We cannot assume, nor did the jury have any basis to find, that such consent would have been forthcoming.

The point in question is somewhat analagous to the situation in *Johnson* v. *Brewer*, 266 Ky 314, 98 SW2d 889, in which the owner was held not liable where the taxi driver accepted credit on a board bill as a part of the fare, the court saying, clearly a driver as a servant would have no authority to carry passengers for other than the regular cash fare.

■■ But the plaintiff claims that the defendant "profited to the extent of $5.00 for this trip," and that this affords a basis for holding the employer liable here. But an act is not to be considered within the scope of the servant's employment merely because he conceives his conduct to be in the interest of his master. *Birmingham News Co.* v. *Browne*, 228 Ala 414, 153 So 889. The Restatement of the Law of Agency, §235 is helpful on this point. "An act of a servant is not within the scope of employment if it is done with no intention

to perform it as a part of or incidental to a service on account of which he is employed." In this case the service on account of which Balch was employed was that of taxi driver in a taxi business, not a car-renting business. If Balch had undertaken to be both taxi driver and passenger, as the plaintiff has contended, he would and should have paid the regular taxi fare.

The case of *Safeway Cab Co.* v. *McConnell*, 181 Okla 612, 75 P2d 884, 886 may be regarded as going to the verge in cases of this type. In that case the evidence showed that the driver of a cab was driving it on his own personal business and not engaged in any mission of the cab company. However, he paid the regular cab fare. The court said: "Clearly, the jury was authorized to believe the man was both driver and passenger. His status as passenger did not erase the fact that he was also driver and that while he may have been on his own business, he was operating the cab as a cab and not as a leased car." Recovery in this case was allowed against the employer. In the case at hand we are asked to hold all that the court did in *Safeway Cab Co.* v. *McConnell, supra,* and then go a step further and say that the same result obtains even though the regular cab fare was not paid and there was no other evidence fairly and reasonably tending to show that that it was a taxi trip. This we can not do.

In arriving at this conclusion we are not in any way at odds with holdings in a different type of situation, namely, one in which the plaintiff approaches a vehicle ostensibly a taxi and so marked, engages it as such at the regular rate in the regular manner as a bona fide customer. In such a case recovery can not be defeated by showing that the driver's regular day had ended several hours earlier and he had no authority to be using the cab at the time and place he was. The plaintiff has cited such a case in *Korner* v. *Cosgrove*, 108 Ohio State 484, 141 NE 267, 31 ALR 1193. A case of the type just described does not apply and does not govern the situation we have before us.

■ It would serve no useful purpose to enter upon a further analysis of the many reported cases dealing with this problem although we have examined a great array of

48

them. The situations they disclose deal with an endless variety of circumstances. Whether, in a given case, the driver of a motor vehicle is acting within the scope of his employment must be determined on a consideration of the attendant facts and circumstances of the particular case. 60 CJS Motor Vehicles §437 (b).

In this case for the reasons stated we hold that the trial court was in error when it denied the defendant's motion for a directed verdict. *The defendant's exceptions are sustained. Judgment is reversed and judgment for the defendant to recover his costs.*