**Margaret Ann ALFORD, Plaintiff-Appellee,**

v.

**Cornelius J. NOONAN, Defendant-Appellant.**

**No. 372, Docket 24964.**

United States Court of Appeals
Second Circuit.

Argued June 4, 1958.

Decided Sept. 16, 1958.

James L. Oakes, Brattleboro, Vt. (Gannett & Oakes, Brattleboro, Vt., on the brief), for plaintiff-appellee.

Donald H. Hackel, Rutland, Vt. (Loveland & Hackel, Webber & Costello, Rutland, Vt., on the brief), for defendant-appellant.

Before CLARK, Chief Judge, and PICKETT and MOORE, Circuit Judges.

MOORE, Circuit Judge.

The defendant, Cornelius J. Noonan, appeals from a judgment in favor of the plaintiff for $16,300 entered on a jury's verdict against the defendants Charles

Slockbower and Cornelius J. Noonan. Slockbower did not appeal. Jurisdiction is based upon diversity. The errors asserted relate to questions of law.

The complaint in substance charges that in September 1956 plaintiff was riding as a passenger in an automobile owned by defendant Noonan and operated by defendant Slockbower in Manchester, Vermont; that Slockbower "was acting in the scope of his employment by defendant Noonan"; and that as a result of Slockbower's gross negligence in operating the automobile at high speed [about 80 miles an hour] it plunged over a cliff causing severe injuries to plaintiff.

The facts material to a decision as a matter of law are not in dispute.

Noonan, a man in his late fifties, in 1956, owned a Cadillac convertible. Neither Noonan nor his wife drove a car and Noonan never had held a driver's license. Noonan was in the habit of using three or four friends to drive him around on vacation trips. Slockbower was a distant relative of Noonan. During the summer of 1956 Slockbower drove Noonan on various trips, including several to Manchester, Vermont, where Mr. and Mrs. Noonan stayed at the Equinox House. Slockbower stayed at the same hotel, ate with the Noonans and Noonan paid for Slockbower's room and meals. While there Slockbower became acquainted with plaintiff who was employed as a hostess at the hotel. He and plaintiff frequently saw each other after working hours and Slockbower, sometimes with Mr. and Mrs. Noonan and sometimes without them, would use Noonan's car to take plaintiff and/or her sister, Patricia, on various rides.

At the end of the season certain of the employees of the hotel, to celebrate the last night before the hotel closed, had a party in plaintiff's rooms in the hotel annex. Slockbower and others were there. They talked and drank until after midnight when they decided to go to Granville, New York, to get some pizza at an Italian restaurant. Slockbower went to the garage, took Noonan's car and with only plaintiff with him headed for Gran-

ville. Three miles from Manchester, Vermont, the accident occurred.

At the close of plaintiff's case defendant Noonan moved in writing for the direction of a verdict on eleven grounds which are, for appellate purposes, sufficiently embraced within the first ground, i. e.:

"1. That taking the evidence in the light most favorable to the Plaintiff, the evidence fails to show that, at the time of the accident on which this action has been brought, the Defendant Slockbower was acting within the scope of any employment by the Defendant Noonan."

This motion was renewed at the conclusion of all the evidence with a further elaboration of the same legal principles. Both motions were denied.

At the end of the charge the trial court submitted to the jury two special interrogatories as follows:

"At the time of the accident involved in this case, did Mr. Slockbower have Mr. Noonan's permission, tacit or otherwise, to use Mr. Noonan's car?"

"Do you find that there was an employment agreement between Cornelius J. Noonan and Charles Slockbower under which, as part of his compensation, Charles Slockbower was to have the right to use Cornelius J. Noonan's car at any time Cornelius J. Noonan didn't desire to use it?"

The jury's answer to both questions was "Yes." Noonan's counsel took appropriate exceptions to the interrogatories and to the portion of the charge that "there is a presumption from the fact of ownership of an automobile, that the driver was the owner's agent and acting within the scope of his employment" (38a).

After the jury had returned a verdict against both defendants, defendant Noonan moved to set aside the verdict as to him and for judgment on grounds substantially similar to his previous motion. This motion was also denied.

In resolving the question of law here involved it is assumed that the jury correctly decided that Slockbower had Noonan's permission to use the car at the time of the accident and that the right to use it was a part of Slockbower's compensation. However, this privilege as between Slockbower and Noonan is not sufficient as a matter of law to impose liability on Noonan unless the use at the time of the accident was within the scope of Slockbower's employment or for Noonan's benefit or interest.

The courts of Vermont on many occasions have had an opportunity to state the legal principles applicable here (Palmer v. Village of St. Albans, 60 Vt. 427, 13 A. 569; Ploof v. Putnam, 83 Vt. 252, 75 A. 277, 26 L.R.A.,N.S., 251; Greenough v. United States Life Ins. Co. of City of New York, 96 Vt. 47, 117 A. 332; Gutzwiller v. American Tobacco Co., 97 Vt. 281, 122 A. 586; Anderson v. Toombs, 119 Vt. 40, 117 A.2d 250). Thus in Anderson v. Toombs, supra, decided in 1955, the Vermont Supreme Court, after citing Ploof v. Putnam, supra, and Greenough v. United States Life Ins. Co. of City of New York, supra, as establishing the rule, quoted with approval the following statement of law in Gutzwiller v. American Tobacco Co., supra (119 Vt. 44, 117 A.2d 253):

> "In order to hold the master liable for the acts of his servant it must appear that the act complained of was done to carry out the directions of the master, express or implied, and not to effect some purpose of the servant alone; or, in other words, that the act was done in furtherance of the master's business and within the scope of the servant's employment."

Mere permission to use whether established by express or implied consent or by agreement of employment does not create liability on the part of the owner unless the use is in some way related to the scope of the employment or for the benefit or in the interest of the owner (Jones v. Knapp, 104 Vt. 5, 156 A. 399).

Appellee not only would extend the "family purpose" principle of liability into a State which has rejected it but even beyond the family to an employer-employee relationship. Referring to this doctrine the Vermont Supreme Court quoted and relied upon the statement in Doran v. Thomsen, 76 N.J.L. 754, 71 A. 296, 299, L.R.A.,N.S., 335, that the doctrine "ignores an essential element in the creation of that status as to third persons, that such use must be in furtherance of and not apart from the master's service and control, and fails to distinguish between a mere permission to use and a use subject to the control of the master and connected with his affairs. * * *" Using the language of Van Blaricom v. Dodgson, 220 N.Y. 111, 115 N.E. 443, 445, L.R.A.1917F 363, it concluded that "If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter's own business, that liability ought to be sought by legislation as a condition of issuing a license rather than by some new and anomalous slant applied by the courts to the principles of agency."

The legislature of Vermont thus has had the problem presented by its highest court but has taken no action to change the long-established rule that the use must be within the scope of employment. If the State of Vermont as a matter of policy desires to adopt a different rule it can easily do so by legislative enactment. It is not the function of this court to assume this prerogative by judicial decision.

Appellee places great stress on the fact that Slockbower's employment contemplated his use of Noonan's car. Assuming this to be true it is not determinative on the issue of liability. Appellee impliedly recognizes this because she tries to bring the midnight trip within the scope of Slockbower's employment by most illogical and extreme arguments, such as (1) that Noonan derived a benefit by having Slockbower use his car to go to meals, and (2) that she was a guest of Noonan on the ill-fated trip.

As to meals, they were being furnished to Slockbower at the hotel. He did not have to drive after midnight to a town some ten miles distant with a young lady to obtain food. The cases of chauffeurs using their employers' cars at mealtime are not in point. To argue that Slockbower had to go such a distance for food with the plaintiff for bodily sustenance so as to be ready at that post-midnight hour to drive for Noonan is to reduce the argument to an absurdity. Of like character is the claim that "Plaintiff was a guest of Noonan's on this trip" (Applt.'s Br., p. 16). Noonan was not even afforded the opportunity to be an absent or uninvited host. There was no proof that Noonan ever suggested to plaintiff or to Slockbower that they might like to use his car to go for a ride after the party. The only specific testimony concerning the night of September 3, 1956 was that Noonan had told Slockbower not to take his car that night because he had an inkling that there was going to be a party and it was a foggy night. However, whether this instruction would override general permissive use is immaterial because the testimony must be viewed in the light most favorable to appellee.

No proof having been adduced that Slockbower was acting in any way for Noonan in taking his car, appellee is forced to assert that the right to use the car imposes an absolute liability upon the owner. This is not the law of Vermont. It is not the law generally. The accepted rule is stated in 5 Am.Jur. 712–713 as follows:

"Apart from the liability created by statute, it is a well-established general rule that the owner of an automobile is not liable for injury or damage resulting from the negligent operation of his car by his employee while the latter is using it for his own pleasure or business. This rule applies not only to cases in which the agent or servant uses his employer's car for his own purposes without the owner's permission or consent, but, according to the great weight of authority, to cases in which the employer has consented to or acquiesced in the employee's use of the car for his own pleasure or business. In other words, an employer is not, by reason of his relation of master or principal, liable for injuries inflicted by his employee when operating the master's automobile for the personal pleasure of the servant when not on regular duty, whether he is using the car with or without the consent of the master."

The cases of Murphey v. United States, 9 Cir., 1950, 179 F.2d 743, and Williams v. United States, 9 Cir., 1957, 248 F.2d 492, only point up the necessity of establishing some relationship between the permissive use and the employer's service.

Appellee failed to establish that Slockbower was in any manner acting within the scope of his employment or for the benefit, or in the interest, of Noonan. This being so, the motion to set aside the verdict and judgment against Noonan should have been granted and judgment entered upon defendant Noonan's motion for a directed verdict in his favor.

Judgment in favor of appellee against appellant reversed with directions that judgment be entered in favor of appellant. No costs.

CLARK, Chief Judge (dissenting).

I would affirm the judgment below, based as it is on a jury verdict rendered upon persuasive evidence in accordance with a charge accepting the realities of modern highway traffic in the United States for Vermont as well.

Appellant Noonan employed Slockbower, the nonappealing co-defendant and driver of appellant's automobile at the time of the accident, to drive him and his wife on a vacation trip in Vermont. This employment took Slockbower away from his home in New Jersey. He had no regular hours and was required to hold himself ready to drive for Noonan at any time. This in fact follows the pattern of relationship previously exist-

ing between the two.[1] The jury found that as part compensation for this employment Slockbower had the right to use Noonan's car whenever Noonan did not require his services. He was using the car under this term of his employment agreement at the time of the accident. On these facts Judge Gibson charged the jury that under Vermont law it could find Slockbower acting within the scope of his employment at the time of the accident and accordingly could hold appellant liable for plaintiff's injuries.

Although the Vermont courts seem never to have passed on the liability of an employer for the acts of an employee while using the employer's automobile as compensation for his services, Judge Gibson's ruling is supported by substantial authority in other jurisdictions, including New Jersey, a state whose decisions are often cited with approval by Vermont courts. Ferris v. McArdle, 92 N.J.L. 580, 106 A. 460; Arnold v. Ollendorf, 9 N.J. Misc. 1198, 157 A. 127; Halsey v. Metz, Mo.App.1936, 93 S.W.2d 41, 44; Byrnes v. Poplar Bluff Printing Co., Mo.1934, 74 S.W.2d 20; Yerger v. Smith, 338 Mo. 140, 89 S.W.2d 66, 77–78; and see annotations in 122 A.L.R. 858, 881, and 52 A.L.R.2d 350, 383. "The fact that the driver had no regular hours of employment, but might be called at any time both day and evening under a steady employment, is a circumstance to consider." Moore v. Roddie, 103 Wash. 386, 174 P. 648, 649–650, modified 106 Wash. 548, 180 P. 879 (where defendant was held liable for his chauffeur's negligence while driving defendant's car to dinner after the chauffeur had finished his services for the day).

Certainly Noonan benefited by Slockbower's use of the car in his off hours. In addition Noonan always retained the "control" of this use, although he might choose not to exercise it. Moreover, Slockbower's right to use the automobile was clearly a term of his employment. Where all these elements are present there seems to be no good reason to shield the employer from liability. In holding that Vermont law, applicable here under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, requires the opposite result, the majority takes a too rigid view of that law contrary to, and most certainly not required by, the Erie doctrine.

The reasoning of the opinion herewith rests almost entirely on the Supreme Court of Vermont's rejection of the "family purpose" doctrine in Jones v. Knapp, 104 Vt. 5, 156 A. 399, in 1931. But the "law" of Vermont applicable to this case is a predictive estimate of how that state's courts today would rule on the question at bar, not a blind obeisance to what may well be an outmoded decision. See, e. g., Wichita Royalty Co. v. City Nat. Bank of Wichita Falls, 306 U.S. 103, 59 S.Ct. 420, 83 L.Ed. 515; Pomerantz v. Clark, D.C.Mass., 101 F. Supp. 341, 345–347. The aim of the Erie decision was to make uniform the results of litigation in the state courts and in the federal courts under our diversity jurisdiction. It is not furtherance of this aim and it is productive of a situation even less desirable than that Erie

---

1. Though Noonan made vociferous, but highly equivocal, denials and counterassertions, it seems fairly clear that Slockbower, who had no other occupation, had been driving quite regularly for Noonan, taking him to and from work in New York and New Jersey and on extensive vacation trips throughout the east from Florida and Atlantic City to Manchester, Vermont. There is no one else shown to have participated in piling up the mileage of 29,307 miles which Noonan's Cadillac convertible had achieved during the nine months that Noonan had owned it. Neither Noonan nor his wife could drive, and Noonan had no driver's license. Noonan himself—either with or without his wife—had accompanied the plaintiff and her sister and Slockbower on many occasions, up the skyline drive at Equinox Mountain, Vermont, to the summer theatre at Dorset, to Bennington, to Manchester Center, to a stone-quarry swimming pool, and so on. So the jury's answer to the interrogatories settled that Slockbower's use of the Noonan car was by permission and that his right to use it at any time Noonan did not desire it was a part of his compensation.

sought to correct for the federal courts to bind themselves to state court decisions long after the court which rendered them has revised its thinking. Vermont law is not uniquely immutable. See cases collected in Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 209 note 4, 76 S.Ct. 273, 280, 100 L.Ed. 199, showing that "the Vermont Supreme Court does not obstinately adhere to its past decisions, that for it too law is living."

So we cannot reverse the trial court on the basis of the Jones case without determining whether the widespread trend of the law expanding vicarious liability in cases of this sort for generally accepted considerations of public policy has not influenced the Supreme Court of Vermont in the more than a quarter century since that decision. Following the instructions of the Supreme Court, we should inquire if "there appears to be * * * confusion in the Vermont decisions, * * * developing line of authorities that casts a shadow over the established ones, * * * dicta, doubts or ambiguities in the opinions of Vermont judges on the question, * * * legislative development that promises to undermine the judicial rule." Bernhardt v. Polygraphic Co. of America, supra, 350 U.S. 198, 205, 76 S.Ct. 273, 277, 100 L.Ed. 199.

Jones v. Knapp, supra, 104 Vt. 5, 156 A. 399, is applicable to this case at best only by way of analogy somewhat remote. The actual decision was that an adult daughter did not so far represent her father in driving his car with his permission that her contributory negligence would bar his recovery of damages for injury to the car. In so holding, the court was able to avoid a technical bar to a recovery of damages for negligent driving. It did, however, expressly disavow the "family purpose" doctrine. Here appellant was found to be liable on a quite different ground, namely, that Slockbower, having been granted the use of the automobile as compensation for his employment, was acting within the scope of that employment relationship

when he availed himself of this contractual right. Moreover, perhaps to counteract the strictness of the Jones decision, the Vermont courts have given a broad and liberal construction to the liability of an employer for acts of his employee. In Gutzwiller v. American Tobacco Co., 97 Vt. 281, 122 A. 586, a salesman was found to be acting within the scope of his employment while driving his employer's car for his own convenience, in violation of instructions and without his employer's consent or knowledge, during his vacation and after he had tendered his resignation.

Again, the employer's liability has been an expanding one in Vermont in recent years. In Capello's Adm'r v. Aero Mayflower Transit Co., 116 Vt. 64, 68 A.2d 913, in 1949, the Supreme Court of Vermont, discussing with approval Dennery v. Great Atlantic & Pacific Tea Co., 82 N.J.L. 517, 81 A. 861, 39 L.R.A.,N.S., 574, overruled its own 1926 decision in Ronan v. J. G. Turnbull Co., 99 Vt. 280, 287–88, 131 A. 788, and held that, in an action for injuries arising out of the operation of an automobile, proof that the automobile was owned by the defendant at the time of the accident makes out a prima facie case that the operator of the automobile was engaged in the defendant's services. And, even more substantially undercutting the Jones holding, the court in Brown v. Gallipeau, 116 Vt. 290, 75 A.2d 694, held that a father appointed his son as his servant by permitting him to use the family car to visit his married sister while the father knew that the son on this same visit would deliver to the sister a present from the father. Here again the court followed a New Jersey ruling. Missell v. Hayes, 86 N.J.L. 348, 91 A. 322.

So we have here (1) a situation where in American jurisprudence there has been a steady extension of the concept of vicarious liability to meet the ever growing menace of the automobile accident on the public highways and (2) a judicial atmosphere disclosing precedents favoring—except for one 27-year-old decision on a different point—growth and develop-

ment in the analogous law. There is also a third factor which we should note, since it has been stressed by the Supreme Court, namely, the trial court's familiarity with Vermont law. Thus in Bernhardt v. Polygraphic Co. of America, supra, 350 U.S. 198, 204, 76 S.Ct. 273, 277, 100 L.Ed. 199, the Court said of this very judge: "Since the federal judge making those findings is from the Vermont bar, we give special weight to his statement of what the Vermont law is." Coming from a family devoted to law and the public service, Judge Gibson has had unique opportunities as practicing lawyer, state's attorney and public official, senator, governor, and judge to know the possibilities of modernization in the law of his native state, certainly much more than have we with our widely different backgrounds, no one of which touches Vermont. In so delicate and developing a field of the law, I believe we would achieve justice by deferring to his views. Cf. Green, Traffic Victims 63–85 (1958).

Thus an entirely restrained and lawyerlike application of the Erie principle naturally leads, in my judgment, to a necessary affirmance of this judgment. But I doubt if such restraint is imposed on us realistically, for the Vermont justices, I expect, are as fully cognizant of the life about them as anyone else, and could hardly avoid realizing the surprise to the layman of a decision such as this, particularly in view of the narrow and technical grounds on which it rests. Had the car proceeded perhaps another minute and another mile or so before the accident, it would have been in New York, where the car owner is liable when use is merely permissive, N. Y. Vehicle and Traffic Law, McKinney's Consol. Laws, c. 71, § 59; Mandelbaum v. United States, 2 Cir., 251 F.2d 748; Parker v. Telesco, Sup., 111 N.Y.S.2d 481, and where more lately liability insurance or a showing of financial responsibility has been made compulsory, N. Y. Vehicle and Traffic Law, Art. 6–A, § 93 et seq. (L. 1956, c. 655, effective Feb. 1, 1957). And, since the automobile was garaged in New York City, the justices might well think of the near certainty that Noonan was protected by insurance which in usual form would cover this risk; and the consequence here found so necessary would be but to exempt—at the plaintiff's loss—an underwriter from a burden to which its premiums were already adjusted. Consideration of such popular details, so well known to all in this gasoline-conscious age, must suggest that we are pressing the Erie doctrine to a dry and wooden extreme where citizens of other states, unlike the home folk, must submit to having their rights settled or lost by dead, and not "living," law.